## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

OAKWOOD LABORATORIES, L.L.C.  )
7670 First Place, Suite A  )
Oakwood Village, Ohio 44146,  )     Case No.: __3:17-cv-5090____
   )
      Plaintiff,  )     Judge: _____
   )
      v.  )     **COMPLAINT FOR MONETARY AND**
   )     **INJUNCTIVE RELIEF**
DR. BAGAVATHIKANUN THANOO  )
4 Margaret Drive  )     **(Jury Demand Endorsed Hereon)**
Somerset, New Jersey 08873,  )
   )
AUROMEDICS PHARMA LLC  )
c/o Corporation Service Company  )
251 Little Falls Drive  )
Wilmington, Delaware 19808,  )
   )
AUROBINDO PHARMA U.S.A., INC.  )
c/o Corporation Service Company  )
251 Little Falls Drive  )
Wilmington, Delaware 19808,  )
   )
AUROBINDO PHARMA LTD.  )
Plot No. 2, Maitrivihar  )
Ameerpet  )
Hyderabad-500038  )
Telangana, India,  )
   )
      Defendants.  )

Plaintiff, Oakwood Laboratories, L.L.C. ("Oakwood"), for its Complaint against Dr. Bagavathikanun Thanoo ("Dr. Thanoo"), AuroMedics Pharma LLC ("AuroMedics"), Aurobindo Pharma U.S.A., Inc. ("Aurobindo USA"), and Aurobindo Pharma Ltd. ("Aurobindo"), alleges as follows:

## PARTIES

1.     Oakwood is a limited liability company with its principal place of business located in Cuyahoga County, Ohio.  Oakwood is owned by members Edward C. Smith (resident of Cleveland Heights, Ohio), Mark T. Smith (resident of Pittsburgh, Pennsylvania), Mary S. Podles (resident of Baltimore, Maryland), Leon Podles (resident of Baltimore, Maryland), Sauganash Foundation, Rockside Foundation, Fairmount Investors, L.L.L.P., Eastern Shore-Mentor Limited Partnership, Green Dolphin Charlies Limited Partnership, Green Dolphin James Limited Partnership, Green Dolphin John Limited Partnership, Green Dolphin Thomas Limited Partnership, Green Dolphin Sarah Limited Partnership, and Green Dolphin Mary Limited Partnership.

2.     The Sauganash Foundation is an Ohio corporation with a principal place of business in New Rochelle, New York.

3.     The Rockside Foundation is an Ohio corporation with a principal place of business in New Rochelle, New York.

4.     Fairmount Investors, L.L.L.P. is a limited liability limited partnership and has the following partners: Edward C. Smith (resident of Cleveland Heights, Ohio), Sarah Phelps Smith (resident of Cleveland Heights, Ohio), Mary Smith Laurent (resident of Shaker Heights, Ohio), John J.A. Smith (resident of Los Angeles, California), Jean Smith Burgess (resident of New Orleans, Louisiana), Margaret Smith Aeschliman (resident of Baltimore, Maryland), Nathaniel E.C. Smith (resident of Cleveland Heights, Ohio), Katherine M. Smith (resident of Cleveland Heights, Ohio), Sarah A.V. Smith (resident of Cleveland Heights, Ohio), Edward C. Smith Irrevocable Trust, and Frederick A. Smith Dynasty Trust.  The Edward C. Smith Irrevocable Trust's trustee is Sarah P. Smith (resident of Cleveland Heights, Ohio) and the Edward C. Smith

Irrevocable Trust's beneficiaries are Mary Smith Laurent (resident of Shaker Heights, Ohio), John J.A. Smith (resident of Los Angeles, California), Jean Smith Burgess (resident of New Orleans, Louisiana), Margaret Smith Aeschliman (resident of Baltimore, Maryland), Nathaniel E.C. Smith (resident of Cleveland Heights, Ohio), Frederick Smith II (resident of Baltimore, Maryland), Katherine M. Smith (resident of Cleveland Heights, Ohio), and Sarah A.V. Smith (resident of Cleveland Heights, Ohio).  The Frederick A. Smith Dynasty Trust's trustees are Sarah P. Smith (resident of Cleveland Heights, Ohio) and Edward C. Smith (resident of Cleveland Heights, Ohio) and the Frederick A. Smith Dynasty Trust's beneficiaries are Mary Smith Laurent (resident of Shaker Heights, Ohio), John J.A. Smith (resident of Los Angeles, California), Jean Smith Burgess (resident of New Orleans, Louisiana), Margaret Smith Aeschliman (resident of Baltimore, Maryland), Nathaniel E.C. Smith (resident of Cleveland Heights, Ohio), Frederick Smith II (resident of Baltimore, Maryland), Katherine M. Smith (resident of Cleveland Heights, Ohio), and Sarah A.V. Smith (resident of Cleveland Heights, Ohio).

5.     The Eastern Shore-Mentor Limited Partnership is a limited partnership and has the following partners: Ann Smith Seabright (resident of Mentor, Ohio), Thomas W. Seabright (resident of Mentor, Ohio), Elizabeth Seabright Budnik (resident of Bratenahl, Ohio), James Seabright (resident of Willoughby, Ohio), Virginia Seabright (Mentor, Ohio), Clair Seabright Wilson (resident of Hermosa Beach, California), Anne Seabright (resident of Los Angeles, California), Mark Seabright (resident of Los Angeles, California), John Seabright (resident of New York, New York), Katherine Seabright (resident of Brooklyn, New York), Mary Caroline Seabright (resident of New York, New York), and Margaret Seabright (resident of Somerville, Massachusetts).

6.     The Green Dolphin Charlies Limited Partnership, Green Dolphin James Limited Partnership, Green Dolphin John Limited Partnership, Green Dolphin Thomas Limited Partnership, Green Dolphin Sarah Limited Partnership, and Green Dolphin Mary Limited Partnership are limited partnerships and collectively referred to as the "Green Dolphin Partnerships."  The Green Dolphin Partnerships have the following partners: Charlies Podles (resident of Baltimore, Maryland), James Podles (resident of Vancouver, B.C., Canada), John Podles (resident of Baltimore Maryland), Thomas Podles (residence of Baltimore, Maryland), Sarah Podles Misra (resident of San Francisco, California), and Mary Podles Mullaj (resident of Baltimore, Maryland).

7.     Dr. Thanoo is an individual who, upon information and belief, resides at 4 Margaret Drive, Somerset, New Jersey 08873.  Dr. Thanoo was employed by and last served as a Vice President of Product Development for Oakwood and is now employed by Aurobindo USA, a direct competitor of Oakwood.

8.     AuroMedics is a Delaware limited liability company with its principal place of business located in Middlesex County, New Jersey.  Upon information and belief, the members of AuroMedics are not citizens of the same state as any of Oakwood's members.

9.     Aurobindo USA is a Delaware corporation with its principal place of business located in Mercer County, New Jersey.

10.    Aurobindo is an Indian corporation with its principal place of business located in India.

## JURISDICTION AND VENUE

11.     This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists and the amount in controversy exceeds $75,000 exclusive of interest and costs.

12.     This court also has subject matter jurisdiction over the claims pursuant to the provisions of 28 U.S.C. § 1331 (federal question jurisdiction) as a claim arises under 18 U.S.C. § 1832, *et seq.*, the Defend Trade Secrets Act of 2016.

13.     This Court has personal jurisdiction over Dr. Thanoo and Aurobindo USA pursuant to N.J. Ct. R. 4:4-4(a).

14.     This Court has personal jurisdiction over Aurobindo and AuroMedics by virtue of paragraph 16 of the Mutual Confidentiality Agreement entered into by Aurobindo, AuroMedics, and Oakwood.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTS

**A.     Oakwood's Confidential Information and Trade Secrets**

16.     Oakwood is a technology-based specialty pharmaceutical company focused on hard-to-develop generic and quasi-generic, sustained-release, and small molecule injectable drugs, as well as contract manufacturing.  This includes the research and development of sustained release injectable drugs involving microsphere systems (collectively, the "Oakwood Products").

17.     Oakwood has devoted extensive time, money, and other resources to the research, design, and development of the Oakwood Products it manufactures including, but not limited to,

5

the design, development, and testing of various injectable drugs, the design, development, and testing of microsphere systems technologies, the design and development of various research processes, the design and development of various quality assurance and regulatory compliance processes, the design and development of various manufacturing processes, contractual arrangements with customers, the identities of contact persons with customers and suppliers, batch record formats and content, standard operating procedures, drug master files, freeze dry cycles and development, product development lists, formation development research, validation methods, validation data and reports, and new drug application ("NDA") filings, planned filings, and associated data.

18.     The design, development, and testing processes, the research processes, the quality assurance and compliance processes, and the manufacturing processes for the Oakwood Products are not generally known outside Oakwood's organization, and Oakwood takes steps reasonable under the circumstances to keep such information confidential, including, but not limited to, having its scientists sign invention and non-disclosure agreements, having potential and actual vendors, suppliers, and other business partners sign confidentiality agreements before sharing information, advising all employees through policy of the requirement that such information must be held confidential, password protecting electronically stored information, and reasonably controlling access to such information.  Therefore, such information constitutes trade secrets under NJ Rev Stat § 56:15-2 (2013) and is hereinafter referred to as Oakwood's "Confidential Information and Trade Secrets."

19.     Oakwood takes such precautions to maintain the secrecy of its Confidential Information and Trade Secrets because Oakwood would suffer irreparable competitive harm if its Confidential Information and Trade Secrets were to be obtained by, or used on behalf of, its

competitors or if the goodwill that it had built with its customers were to be used by a competitor.

**B.     Dr. Thanoo's Employment At Oakwood**

20.     Oakwood hired Dr. Thanoo on or about November 24, 1997, in the position of Senior Scientist.  As a condition of employment and to protect Oakwood from misuse and/or disclosure of proprietary information, Oakwood required Dr. Thanoo to sign both an Inventions Agreement ("Inventions Agreement"), a true and accurate copy of which is attached hereto as **Exhibit A**, and a Non-Disclosure Statement Agreement ("Non-Disclosure Agreement"), a true and accurate copy of which is attached hereto as **Exhibit B**.

21.     Paragraph 2 of Dr. Thanoo's Invention Agreement provides, in part, as follows:

> ***Employee agrees he will fully and promptly disclose to Oakwood Laboratories, L. L. C***., through its President or other duly authorized designee, ***all invention and improvements***, whether then believed or later found to be patentable or not, made or conceived solely by Employee, or jointly with another or other, within the whole term of his employment by Oakwood Laboratories, L.L.C, and ***for twenty-four months (24) after the termination*** of such employment, ***which relates to or are useful in the business, research, investigations, products, machines, and all lawful interests and activities of Oakwood*** Laboratories, L. L. C. Employee further agrees that he will always upon Oakwood Laboratories, L.L.C. 's request or demand, ***promptly perform all proper and necessary legal acts to assign*** to and vest in Oakwood Laboratories, L.L.C., ***the entire right, title and interest in and to all such inventions*** and/or improvements and all Letters Patent, United States and foreign therefor, together with the entire and exclusive rights to seek, obtain and enjoy all such Letters Patent.  To that end Employee agrees that he will at all times execute and deliver to and/or adduce or give in behalf of Oakwood Laboratories, L.L.C., promptly at its request any lawful writings, assignments, application papers, powers, oaths, evidence and testimony to vest, protect and secure in Oakwood Laboratories, L.L.C. all the rights, titles, and interest in inventions improvements, applications, and patents to which this agreement pertains.  Employee further agrees to comply with the practice and rules from time to time prescribed by Oakwood Laboratories, L.L.C., concerning the making, preserving and possession of written records, drawings, and disclosures of inventions and improvements and otherwise concerning the performance of this agreement, and ***agrees to respect and preserve all secret and/or confidential information concerning the affairs of Oakwood Laboratories***, L.L. C., of which he may become possessed.  (Emphasis added.)

22.     The Non-Disclosure Agreement prohibits Dr. Thanoo from disclosing or using at any time Oakwood's Confidential Information and Trade Secrets.   The Non-Disclosure Agreement provides, in part:

> I understand and acknowledge **my obligation to refrain from disclosing Oakwood Laboratories' confidential and proprietary information and to refrain from using it** for the benefits of any other person or entity without the permission of Oakwood Laboratories.  **I understand that my obligation results from the nature of my employment and the circumstances of disclosure, and will remain even after termination of my employment relationship.** (Emphasis added.)

23.     The Non-Disclosure Agreement is reasonable in that it does not restrict Dr. Thanoo from working for a competitor of Oakwood.  Rather, the restriction only prevents Dr. Thanoo from disclosing or using Oakwood's confidential and proprietary information.  The Non-Disclosure Agreement protects a legitimate business interest by protecting proprietary information that is confidential and/or trade secret.   The Non-Disclosure Agreement is reasonably necessary for the protection of the business and goodwill developed by Oakwood and Oakwood would sustain irreparable harm if Dr. Thanoo should continue to violate the covenants set forth there in.

24.     During his employment by Oakwood, Dr. Thanoo had extensive involvement in and knowledge of the design, development, and implementation of the Oakwood Products.  In his role as Vice President of Product Development and his prior position as Senior Scientist, Dr. Thanoo designed or directly supervised the design of Oakwood's microsphere systems technology as well as other injectable drug delivery systems, and coordinated the research, development and testing of the Oakwood Products.  Dr. Thanoo directly designed Oakwood's microsphere systems technology, including the design, research and development of a new

leuprolide injection product that relies on microsphere technology (the "Leuprolide[1] Project") that Oakwood began developing in 2013 during his employment.   In all, Dr. Thanoo was involved in nine (9) approved patents filed by Oakwood.

## C.   Oakwood Discusses A Business Venture With Aurobindo

25.    Aurobindo, headquartered in Hyderabad, India, manufactures generic pharmaceutical drugs and active pharmaceutical ingredients ("API") related primarily to seven major therapeutic and product areas that encompass neurosciences, cardiovasculars, gastroenterologicals, antibiotics, anti-retrovirals, anti-diabetics and anti-allergics.   Aurobindo operates in 150 different countries, including the United States through its subsidiary Aurobindo USA, which is based in New Jersey.

26.    On October 3, 2013, V. Ganesh Ramnan ("Mr. Ramnan"), General Manager of Sales and Marketing at Aurobindo USA, met with Oakwood's Chief Executive Officer, Mark Smith ("Mr. Smith"), and Dr. Thanoo at Oakwood's headquarters in Cleveland, Ohio, to discuss Aurobindo's peptides product.

27.    In subsequent emails with Mr. Ramnan, Mr. Smith discussed a business venture in which Aurobindo USA would sell an API to Oakwood for its Leuprolide Project.

28.    In an email on November 13, 2013, Mr. Smith noted:

Oakwood has developed and has just started to pursue a collaboration for three of its leading product candidates which are three/four month sustained release leuprolide injections of differing doses.   All three products are bioequivalent to comparable dosage forms of Abbott Laboratories' Lupron Depot®, and can be approved on the basis of one bioequivalence trial.   There currently are no

---

[1] Leuprolide is a member of the group of drugs known as gonadotropin-releasing hormone analogs (GnRH analogs), also known as luteinizing hormone releasing hormone agonists (LHRH agonists) or LHRH analogs. Leuprolide is a synthetic peptide drug modeled after the human hypothalamic gonadotropin releasing hormone (GnRH). A GnRH analogue is designed to interact with the GnRH receptor and modify the release of pituitary gonadotropins FSH and LH for therapeutic purposes, stopping the release of testosterone from the testicles in men and the release of estrogen from the ovaries in women. This reduction of hormone levels slows or stops the growth of cancer cells that depend on these hormones.  If GnRH treatment is stopped, hormone levels are expected to return to normal.

approved generic versions of these products in the US due to the high level of difficulty in developing and manufacturing such specialized products. Attached please find a brief summary of this opportunity.

Mr. Smith concluded the email by noting that he would like to discuss the Leuprolide Project further, on the condition that Aurobindo enter into a confidentiality agreement.

29.     On November 18, 2013, Aurobindo Chief Executive Officer N. Govindarajan ("Mr. Govindarajan") visited Oakwood's headquarters where he met with Mr. Smith to discuss Aurobindo's and Aurobindo USA's capabilities. Mr. Govindarajan also spoke with Dr. Thanoo during his visit to Oakwood.

30.     On November 20, 2013, Mr. Govindarajan connected via email Dr. Thanoo and J.V.N. Reddy ("Dr. Reddy"), Vice President of Aurobindo, noting that the two were old friends and "batch mate[s] at Madras University."

31.     On November 29, 2013, Aurobindo executed a confidentiality agreement between it, AuroMedics, another U.S. subsidiary of Aurobindo based in New Jersey, and Oakwood, wherein each of the parties agreed to not disclose or use any confidential information shared by the other parties while discussing the Leuprolide Project (the "Confidentiality Agreement"). (A true and accurate copy of the Mutual Confidentiality Agreement is attached hereto as **Exhibit C**). AuroMedics subsequently executed the confidentiality agreement on December 2, 2013, and Oakwood on December 3, 2013.

32.     On December 3, 2013, Oakwood sent the fully executed confidentiality agreement to Aurobindo and AuroMedics along with confidential information including a 27-page memorandum explaining the Leuprolide Project in great detail.

33.     Pursuant to the Confidentiality Agreement, Aurobindo and AuroMedics agreed to "use the Confidential Information of a Disclosing Party **solely for the Permitted Use** and for no

other purpose.  Recipient will keep all Confidential Information of a Disclosing Party secret and confidential and will not reproduce, distribute, disclose, make available or otherwise disseminate Confirmation Information…"  (Exhibit C, ¶ 3) (emphasis added).

**D.     Aurobindo's Recruitment Of Dr. Thanoo**

34.     On December 16, 2013, representatives from Oakwood, including Dr. Thanoo, Aurobindo and AuroMedics engaged in a conference call to discuss the Leuprolide Project.

35.     On December 17, 2013, Mr. Ramnan sent an email to Dr. Thanoo noting that he tried to call Dr. Thanoo and wanted to know when Dr. Thanoo might be available to talk.  Mr. Ramnan did not mention the subject of the discussion.  Dr. Thanoo responded that he was out of the country on a work-related trip and would be available to talk later in the week.  Mr. Ramnan tried to call Dr. Thanoo again on December 20, 2013, and followed the missed call with an email that included his cell phone number so that Dr. Thanoo could call back.

36.     On January 9, 2014, Dr. Reddy sent his username for Skype, an Internet-based video conferencing system, to Dr. Thanoo so that the two could speak via video later that day.

37.     Ultimately, Aurobindo informed Oakwood that it was not interested in pursuing the Leuprolide Project with Oakwood due to financial considerations.

38.     Oakwood subsequently engaged a different company to provide API for the Leuprolide Project, which it continues to develop for the market.

**E.     Dr. Thanoo Leaves Oakwood For Aurobindo To Develop A Product Substantially Similar To Oakwood's Leuprolide Project**

39.     On April 7, 2014, Dr. Thanoo tendered his resignation from Oakwood and informed Oakwood that it was effective April 25, 2014.  During a follow-up conversation, Dr. Thanoo told Mr. Smith that he was going to Aurobindo USA to develop standard generic injectable drugs and that his work would not include microsphere system technology.

40.     In April 2014, Aurobindo USA hired Dr. Thanoo in the position of Vice President of R&D Injectables, with a focus on development of "complex generic injectable drugs."   Upon information and belief, Dr. Thanoo is engaging in work that includes microsphere system technology.

41.     In late 2016, Oakwood learned from a published transcript of an investor call with Mr. Govindarajan that Aurobindo is developing "four peptide based microsphere products which have around $3 billion top line."   Oakwood subsequently learned that Aurobindo has been working on microsphere system technology since at least February 2016, and likely much earlier than that given that Aurobindo expected to bring the products to market in 2017.

42.     Upon information and belief, Aurobindo, AuroMedics, and/or Aurobindo are developing or have developed a product substantially similar to Oakwood's Leuprolide Project without Oakwood's consent and/or knowledge.   Aurobindo, AuroMedics, and/or Aurobindo could not develop this product without Dr. Thanoo's assistance and his use of Oakwood's Confidential Information and Trade Secrets, in violation of his Non-Disclosure Agreement.

43.     Further, Aurobindo, AuroMedics, and/or Aurobindo could not develop this product without Oakwood's Confidential Information and Trade Secrets sent by Oakwood to Aurobindo and AuroMedics as part of the discussions related to the potential business venture. This unpermitted use by Aurobindo and AuroMedics of Oakwood's Confidential Information and Trade Secrets constitutes a breach of the Confidentiality Agreement.

44.     In February 2017, Aurobindo announced that it expects to bring to market medications relying on microsphere system technology in Fiscal Year 2018, which began on April 1, 2017.

45.     Despite working for Aurobindo USA since April 2014, Dr. Thanoo has not notified Oakwood of any inventions or improvements which he, either solely or jointly with others, has developed that are related to or would be useful in Oakwood's research, investigations, products, machines after his resignation, as required by the Inventions Agreement.

46.     Dr. Thanoo's wrongful activities in violation of the Inventions Agreement and Non-Disclosure Agreement have caused Oakwood to suffer irreparable harm.   Unless Dr. Thanoo is enjoined from disclosing and using Oakwood's Confidential Information and Trade Secrets and from otherwise violating his agreements with Oakwood, Dr. Thanoo will continue to cause Oakwood great and irreparable competitive harm.

## CAUSES OF ACTION

### Count I
### Misappropriation of Trade Secrets
### Defend Trade Secrets Act of 2016 – 18 U.S.C. § 1832, *et seq.*
### (Defendant Dr. Thanoo)

47.     Oakwood incorporates by reference the statements and allegations previously set forth in its Complaint as if fully rewritten herein.

48.     Dr. Thanoo possesses trade secret information belonging to Oakwood including, but not limited to, its Confidential Information and Trade Secrets by virtue of Dr. Thanoo's employment with Oakwood.

49.     Oakwood's Confidential Information and Trade Secrets are directly related to the development, testing, and manufacturing of products that are intended for use in or sold by Oakwood through interstate or foreign commerce.

50.     Oakwood's Confidential Information and Trade Secrets are not generally known and Oakwood takes reasonable steps to maintain confidentiality with respect to its trade secret material, including the information referenced above.

51.     Oakwood derives independent economic value from its Confidential Information and Trade Secrets not being generally known to or readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

52.     In his role as Vice President of R&D Injectables at Aurobindo USA, Dr. Thanoo has used and disclosed, at least since his resignation from Oakwood, and is continuing to use and disclose Oakwood's Confidential Information and Trade Secrets without authorization and in breach of his contractual obligations to Oakwood.

53.     The nature of Dr. Thanoo's employment with Aurobindo USA, and Aurobindo's recent foray into microsphere technology, makes the risk of Dr. Thanoo's continued disclosure to and use on behalf of Aurobindo of Oakwood's Confidential Information and Trade Secrets incredibly high and likely inevitable.

54.     Because the nature of Dr. Thanoo's activities with Aurobindo will make disclosure of Oakwood's trade secrets inevitable, his continued business activities with Aurobindo constitute imminent, immediate, and irreparable harm to Oakwood.

55.     Dr. Thanoo misappropriated Oakwood's trade secrets, and unless restrained, Oakwood will continue to misappropriate Oakwood's trade secrets.

56.     Oakwood has sustained damages and injury exceeding the principal sum of $75,000 as a direct and proximate result of Dr. Thanoo's misappropriation of its trade secrets.

57.     Dr. Thanoo misappropriated Oakwood's trade secrets willfully and maliciously, entitling Oakwood to recover attorneys' fees from Dr. Thanoo pursuant to 18 U.S.C. §

1836(b)(3)(D) and punitive or exemplary damages from Dr. Thanoo pursuant to 18 U.S.C. § 1836(b)(3)(C).

**<u>Count II</u>**
**Misappropriation of Trade Secrets**
**New Jersey Trade Secrets Act - NJ Rev Stat § 56:15-1 *et seq.***
**(Defendant Dr. Thanoo)**

58.    Oakwood incorporates by reference the statements and allegations previously set forth in its Complaint as if fully rewritten herein.

59.    Dr. Thanoo possesses trade secret information belonging to Oakwood including, but not limited to, its Confidential Information and Trade Secrets by virtue of Dr. Thanoo's employment with Oakwood.

60.    Oakwood's Confidential Information and Trade Secrets are not generally known and Oakwood takes reasonable steps to maintain confidentiality with respect to its trade secret material, including the information referenced above.

61.    In his role as Vice President of R&D Injectables at Aurobindo USA, Dr. Thanoo has used and disclosed and is continuing to use and disclose Oakwood's Confidential Information and Trade Secrets without authorization and in breach of his contractual obligations to Oakwood.

62.    The nature of Dr. Thanoo's employment with Aurobindo USA, and Aurobindo's recent foray into microsphere technology, makes the risk of Dr. Thanoo's disclosure to and use on behalf of Aurobindo of Oakwood's Confidential Information and Trade Secrets incredibly high and likely inevitable.

63.    Because of the nature of Dr. Thanoo's activities with Aurobindo will make disclosure of Oakwood's trade secrets inevitable, his continued business activities with Aurobindo constitute imminent, immediate, and irreparable harm to Oakwood.

15

64.     Dr. Thanoo misappropriated Oakwood's trade secrets, and unless restrained, Oakwood will continue to misappropriate Oakwood's trade secrets.

65.     Oakwood has sustained damages and injury exceeding the principal sum of $75,000 as a direct and proximate result of Dr. Thanoo's misappropriation of its trade secrets.

66.     Dr. Thanoo misappropriated Oakwood's trade secrets willfully and maliciously, entitling Oakwood to recover attorneys' fees from Dr. Thanoo pursuant to NJ Rev Stat § 56:15-6 and punitive or exemplary damages from Dr. Thanoo pursuant to NJ Rev Stat § 56:15-4(b).

<u>**Count III**</u>
**Breach of Contract – Inventions Agreement**
**(Defendant Dr. Thanoo)**

67.     Oakwood incorporates by reference the statements and allegations previously set forth in its Complaint as if fully rewritten herein.

68.     Dr. Thanoo and Oakwood entered into the Inventions Agreement, a valid and enforceable contract.

69.     The Inventions Agreement requires Dr. Thanoo to "fully and promptly disclose to Oakwood…all inventions and improvements…for twenty-four months (24) after the termination of such employment which relates to or are useful in the business, research, investigations, products, machines, and all lawful interests and activities of Oakwood."  (*See* Exhibit A).

70.     Dr. Thanoo did not provide Oakwood with notification of any inventions or improvements following his resignation or the twenty-four (24) months thereafter despite the fact that he was working at Aurobindo USA, a direct competitor of Oakwood's, since his resignation in the exact same or similar capacity as he was with Oakwood.

71.     By failing to notify Oakwood of all inventions and improvements which relate to the business, research, investigations, products, machines, and all lawful interests and activities of Oakwood, Dr. Thanoo breached the Inventions Agreement he signed on November 24, 1997.

72.     Unless restrained by the Court, Dr. Thanoo will continue his unlawful acts.

73.     As a direct and proximate result of Dr. Thanoo's breaches, Oakwood sustained damages.

74.     The damages to Oakwood resulting from Dr. Thanoo's breaches of the Inventions Agreement will be difficult if not impossible to ascertain, but in any event they will exceed $75,000.

<u>**Count IV**</u>
**Breach of Contract – Non-Disclosure Agreement**
**(Defendant Dr. Thanoo)**

75.     Oakwood incorporates by reference the statements and allegations previously set forth in its Complaint as if fully rewritten herein.

76.     Dr. Thanoo and Oakwood entered into the Non-Disclosure Agreement, a valid and enforceable agreement.

77.     Under the terms of the Non-Disclosure Agreement, Dr. Thanoo had an "obligation to refrain from disclosing Oakwood Laboratories' confidential and proprietary information and to refrain from using it for the benefits of any other person or entity without the permission of Oakwood Laboratories." (*See* Exhibit B).  This obligation remained even after the termination of Dr. Thanoo's employment relationship with Oakwood.

78.     As described above, Dr. Thanoo breached the Non-Disclosure Agreement by disclosing, using, and misappropriating Oakwood's confidential and proprietary information, and trade secrets.  In engaging in such wrongful conduct, Dr. Thanoo has disclosed and continues to

disclose Oakwood's Confidential Information and Trade Secrets in violation of the Non-Disclosure Agreement.

79.     The Non-Disclosure Agreement is reasonable and serves to protect Oakwood's Confidential Information and Trade Secrets, customer relationships and goodwill, and its investment in training Dr. Thanoo.   Enforcement of the Non-Disclosure Agreement will not injure the public in any respect.

80.     Unless restrained by the Court, Dr. Thanoo will continue his unlawful acts.

81.     As a direct and proximate result of Dr. Thanoo's breaches, Oakwood sustained damages.

82.     The damages to Oakwood resulting from Dr. Thanoo's breaches of the Non-Disclosure Agreement will be difficult if not impossible to ascertain, but in any event they will exceed $75,000.

**Count V**
**Breach of Contract – Confidentiality Agreement**
**(Defendants Aurobindo and AuroMedics)**

83.     Oakwood incorporates by reference the statements and allegations previously set forth in its Complaint as if fully rewritten herein.

84.     Oakwood, AuroMedics, and Aurobindo entered into the Confidentiality Agreement, a valid and enforceable agreement.

85.     The Confidentiality Agreement provides, in pertinent part:

> [AuroMedics and Aurobindo] will use the Confidential Information of [Oakwood] solely for the Permitted Use and for no other purpose. [AuroMedics and Aurobindo] will keep all Confidential Information of [Oakwood] secret and confidential and will not reproduce, distribute, disclose, make available, or otherwise disseminate Confidential Information…

(Exhibit C, ¶ 3).

86.     On December 3, 2013, Oakwood sent confidential information including a 27-page memorandum explaining the Leuprolide Project in great detail to AuroMedics and Aurobindo.

87.     Upon information and belief, Aurobindo, AuroMedics, and/or Aurobindo USA are developing or have developed a product substantially similar to Oakwood's Leuprolide Project.   Aurobindo, AuroMedics, and/or Aurobindo USA could not develop this product without Oakwood's Confidential Information and Trade Secrets sent by Oakwood to Aurobindo and AuroMedics as part of the discussions related to the potential business venture.   This unpermitted use by Aurobindo and AuroMedics of Oakwood's Confidential Information and Trade Secrets constitutes a breach of the Confidentiality Agreement.

88.     Pursuant to the Confidentiality Agreement, "[i]f a party brings a legal action against the other arising out of this Agreement, then the prevailing party will be entitled, to the fullest extent permitted by law, to recover its reasonable attorneys' fees and all other expenses and costs incurred in connection with such action or proceeding."  (Exhibit C, ¶ 13).

89.     As a direct and proximate result of Aurobindo and AuroMedics' breaches, Oakwood sustained damages.

90.     The damages to Oakwood resulting from Aurobindo and AuroMedics' breaches of the Confidentiality Agreement will exceed $75,000, plus reasonable attorneys' fees and all other expenses and costs incurred.

### Count VI
### Tortious Interference with Contractual Relationship
### (Defendants Aurobindo and Aurobindo USA)

91.     Oakwood incorporates by reference the statements and allegations previously set forth in its Complaint as if fully rewritten herein.

19

92.     Oakwood had valid a Non-Disclosure Agreement with Dr. Thanoo.

93.     Under the terms of the Non-Disclosure Agreement, Dr. Thanoo had an "obligation to refrain from disclosing Oakwood Laboratories' confidential and proprietary information and to refrain from using it for the benefits of any other person or entity without the permission of Oakwood Laboratories."  (*See* Exhibit B).

94.     Oakwood is informed and believes that Aurobindo USA and Aurobindo were aware of the existence of that agreement.

95.     Aurobindo USA and Aurobindo intentionally procured breaches of Dr. Thanoo's Non-Disclosure Agreement.  Upon information and belief, Aurobindo, AuroMedics, and/or Aurobindo USA is developing a product substantially similar to Oakwood's Leuprolide Project. Aurobindo, AuroMedics, and/or Aurobindo USA could not develop this product without Dr. Thanoo's assistance and his use of Oakwood's Confidential Information and Trade Secrets, in violation of his Non-Disclosure Agreement.

96.     Aurobindo USA and Aurobindo's interference with Dr. Thanoo's Non-Disclosure Agreement was without justification.

97.     Aurobindo USA and Aurobindo acted with malice toward Oakwood when tortiously interfering with Dr. Thanoo's Non-Disclosure Agreement with Oakwood.

98.     Oakwood sustained damages exceeding $75,000 as a direct and proximate result of Aurobindo USA and Aurobindo's tortious interference with Dr. Thanoo's Non-Disclosure Agreement with Oakwood.

**WHEREFORE**, Oakwood Laboratories, L.L.C. respectfully requests that this Court enter judgment against Defendants Dr. Bagavathikanun Thanoo, AuroMedics Pharma LLC,

Aurobindo Pharma U.S.A., Inc., and Aurobindo Pharma Ltd. and in favor of Oakwood Laboratories, L.L.C. as follows:

      a.      Compensatory damages in an amount exceeding the principal sum of $75,000, to be proven at trial;

      b.      Punitive or exemplary damages;

      c.      A preliminary and permanent injunction enjoining and restraining Defendants;

      d.      Reasonable attorneys' fees and costs incurred by virtue of this action; and

      e.      Such other and further relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff Oakwood Laboratories, L.L.C., hereby demands a trial by jury, by the maximum number of jurors permitted by law, on all issues so triable herein.

Dated:  July 12, 2017             BENESCH, FRIEDLANDER, COPLAN
                                  & ARONOFF, LLP

                         */s/ Kevin M. Capuzzi*
                        By: Kevin M. Capuzzi (NJ No. 173442015)
                        Continental Plaza II
                        411 Hackensack Ave., 3rd Floor
                        Hackensack, NJ 07601-6323
                        Telephone: (302) 442-7010
                        Facsimile: (302) 442-7012
                        kcapuzzi@beneschlaw.com

                        *Attorneys for Oakwood Laboratories, L.L.C.*

10283216 v1