# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **OAKWOOD LABORATORIES, L.L.C.,** | ) CASE NO. 3:17-CV-05090 |
| | ) |
| | ) Judge Peter G. Sheridan |
| Plaintiff, | ) |
| | ) Motion Day:  November 6, 2017 |
| vs. | ) |
| | ) |
| **DR. BAGAVATHIKANUN THANOO,** *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |

_____

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

_____

**BENESCH FRIEDLANDER COPLAN & ARONOFF LLP**
Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Avenue, 3rd Floor
Hackensack, New Jersey 07601
Phone: (302) 442-7063
Email: kcapuzzi@beneschlaw.com

Matthew D. Gurbach (*Pro Hac Vice* Admission, OH No. 0076707)
Richard E. Hepp (*Pro Hac Vice* Admission, OH No. 00904480)
Nora K. Cook (*Pro Hac Vice* Admission, OH No. 0086399)
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Phone: (216) 363-4500
Email: mgurbach@beneschlaw.com
        rhepp@beneschlaw.com
        ncook@beneschlaw.com
*Attorneys for Plaintiff Oakwood Laboratories, L.L.C.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................... 2

I.   OAKWOOD'S CONFIDENTIAL INFORMATION AND TRADE
     SECRETS .................................................................................................... 2

II.  DR. THANOO'S EMPLOYMENT AT OAKWOOD ................................ 4

III. OAKWOOD DISCUSSES A BUSINESS VENTURE WITH
     AUROBINDO .............................................................................................. 5

IV.  DR. THANOO LEAVES OAKWOOD FOR AUROBINDO AND
     MISAPPROPRIATES OAKWOOD'S TRADE SECRETS TO
     DEVELOP A PRODUCT SUBSTANTIALLY SIMILAR TO
     OAKWOOD'S LEUPROLIDE PROJECT ................................................ 6

LAW AND ARGUMENT ..................................................................................... 8

I.   OAKWOOD'S COMPLAINT STATES CLAIMS UPON WHICH
     THIS COURT MAY GRANT RELIEF ..................................................... 8

II.  OAKWOOD HAS SUFFICIENTLY PLED MISAPPROPRIATION
     OF TRADE SECRETS ............................................................................... 9

     A.   The Complaint Adequately Identifies The Existence Of Trade
          Secrets ............................................................................................. 10

     B.   Plaintiff Sufficiently Alleges That It Took Precautions To
          Maintain The Secrecy Of Its Trade Secrets And, Furthermore,
          The Trade Secrets Are Not Publicly Known .................................. 15

     C.   Oakwood Alleges That Dr. Thanoo Used Oakwood's
          Confidential Information And Trade Secrets .................................. 18

i

  D.  This Court Has Recognized And May Apply The Inevitable
      Disclosure Doctrine .......................................................................... 20

  E.  Oakwood's Misappropriation Claims Are Not Barred By The
      Statute Of Limitations ..................................................................... 21

III.  OAKWOOD HAS ASSERTED VALID CLAIMS FOR BREACH OF
      CONTRACT AND TORTIOUS INTERFERENCE WITH
      CONTRACTUAL RELATIONSHIP ....................................................... 23

  A.  Breach of Contract:  Breach of Invention Agreement (Count
      III), Breach of Nondisclosure Agreement (Count IV), and
      Breach of Confidentiality Agreement (Count V) ............................. 23

  B.  The Complaint States A Claim For Tortious Interference With
      Contract ........................................................................................... 24

CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

CASES                                                    PAGE

*214 Corp. v. Casino Reinvestment Dev. Auth.*, 280 N.J. Super. 624, 628
(Law. Div. 1994) ................................................................................25

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) ...........................9

*Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ........................................ 8-9

*Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985) ....................23

*Diversified Indus., Inc. v. Vinyl Trends, Inc.* No. 13-6194, 2014 WL
1767471, at *8 (D.N.J. May 1, 2014) ...................................................14

*Exeltis USA Dermatology, Inc. v. Accella Pharm., LLC*, No. 15-7446, 2016
WL 4265716, at *2 (D.N.J. Aug. 11, 2016) ........................................14

*Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs.*, 2006 U.S. Dist.
LEXIS 70834, at *24-25 (D.N.J. Sept. 29, 2006)................................11

*Fluoramics, Inc. v. Trueba*, No. BER-C-408-05, 2005 WL 3455185, at *8
(N.J, Super. Ch. Dec. 16, 2005) ..........................................................21

*Givaudan Fragrances Corp. v. Krivda*, No. 08-4409, 2013 WL 5781183
(D.N.J. Oct. 25, 2013) .................................................................. 12-14

*Graco, Inc. v. PMC Global, Inc.,* 2009 WL 904010, at *18 (D.N.J. Mar. 31,
2009) ..................................................................................................21

*Hatfield v. AutoNation, Inc.*, 939 So. 2d 155, 156-158 (Fla. Dist. Ct. App.
2006) ..................................................................................................20

*IDT Corp. v. Unlimited Recharge, Inc.*, No. 11-4992, 2012 WL 4050298, at
*11 (D.N.J. Sept. 13, 2012) ..........................................................8, 11

*JustMed, Inc. v. Byce*, 600 F.3d 1118, 1130 (9th Cir. 2010) ..............................18

*Lopez v. Swyer*, 62 N.J. 267, 272 (1973) ..........................................................21

iii

*Orthovita, Inc. v. Erbe*, No. 07-2395, 2008 WL 423446, at *10 (E.D.Pa. Feb. 14, 2008) ................................................................................21

*Osteotech, Inc. v. Biologic, LLC*, No. 07-1296, 2008 WL 686318, at *5 (D.N.J. March 7, 2008) ................................................... 11, 14, 18, 20

*Oswell v. Morgan Stanley Dean Witter & Co.*, No. 06cv5814, 2007 WL 1756027, at *6 (D.N.J. June 18, 2007) .............................................11

*Reckitt Benckiser, Inc. v. Tris Pharma, Inc.*, No. 09-3125, 2011 WL 773034, at *4 (D.N.J. Feb. 28, 2011) ................................................... 16-17

*Rycoline Prod., Inc. v. Walsh*, 334 N.J.Super. 62, 71, 756 A.2d 1047 (App.Div. 2000) ....................................................................10

*Strikeforce Technologies, Inc. v. WhiteSky, Inc.* ....................................14

*Sun Dial Corp. v. Rideout*, 108 A.2d 442 (N.J. 1954) ..........................15

*Talon Indus., LLC v. Rolled Metal Prods.*, 2016 U.S. Dist. LEXIS 49596, at *4 (D.N.J. April 12, 2016) ................................................22

*United States ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 139-141 (E.D. Pa. 2012) ......................................................2

## STATUTES

Fed. R. Civ. P. 12(b)(6) ................................................... 2, 12-14, 20

Fed. R. Civ. P. 56 ........................................................................2

18 U.S.C. § 1836(b)(1) ...............................................................10

18 U.S.C. § 1836(d) ...................................................................21

18 U.S.C. § 1839(5) ...................................................................10

N.J. Stat. § 56:15-8 ....................................................................21

Restatement (Third) of Unfair Competition § cmt. c (1995) ...............19

Plaintiff Oakwood Laboratories, LLC ("Oakwood") respectfully submits its opposition to the Motion to Dismiss ("Motion") filed by Defendants Dr. Bagavathikanun Thanoo ("Dr. Thanoo"), AuroMedics Pharma LLC ("AuroMedics"), Aurobindo Pharma U.S.A., Inc. ("Aurobindo USA"), and Aurobindo Pharma Ltd. ("Aurobindo") (collectively, "Defendants").

## PRELIMINARY STATEMENT

Each allegation and statement contained in Oakwood's Complaint is true as mandated by the Federal Rules of Civil Procedure. Defendants ignore this in their baseless Motion, opting instead to improperly contort governing law, introduce "facts" outside of the pleading, and argue a *de facto* motion for summary judgment. Despite their unsupported factual conclusions and inapposite authority, two things are clear: (1) Oakwood alleges a claim upon which this Court can grant the relief sought; and (2) Defendants are desperate to avoid discovery and are willing to blur the procedural lines between summary judgment and a motion to dismiss in order achieve that goal. Oakwood asks that this Court see through Defendants' smokescreen, deny the Motion, and allow this matter to proceed.

In their Motion, Defendants fail to meet their burden to demonstrate that Oakwood has not stated a claim upon which relief can be granted. Defendants misinterpret legal authority as a way to improperly seek the imposition of a heightened pleading standard that does not exist. The Complaint adequately alleges misappropriation of trade secrets and sufficiently identifies the trade secrets

in issue.  Furthermore, Oakwood specifically alleges that Dr. Thanoo used and disclosed its confidential information and trade secrets.

Defendants also opted to file a self-serving declaration from their lawyer purporting to introduce a random collection of documents.  The allegations in the Complaint satisfy the motion to dismiss standard so Defendants introduce letters, patents, and webpages bound together by their own self-serving and extrapolated conclusions.  Defendants' tactics and arguments are not appropriate under any procedural analysis, let alone a motion to dismiss.  Defendants' attempt to introduce these documents further underscores the sufficiency of Oakwood's Complaint as the Federal Rules of Civil Procedure entitle it to explore each of these documents in discovery.[1]

Oakwood's Complaint states a claim upon which this Court may grant it relief.  The Court should, therefore, deny the Motion.

---

[1] Oakwood has concurrently filed *Plaintiff's Motion To Strike Declaration Of Michael A. Sitzman In Support Of Defendants' Motion To Dismiss Under Federal Rule Of Civil Procedure 12(B)(6)*, seeking to strike the declaration of Defendants' counsel attached to its Motion for introducing matters extraneous to the pleadings and for asking the Court to assume the truth of the contents of those documents. Such actions are impermissible.  *See United States ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 139-141 (E.D. Pa. 2012)  ("courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record," noting that notices involving matters of public record "only to indicate what was in the public realm at the time, not whether the contents of those documents are true").  To the extent that this Court accepts the Declaration and converts the Motion to a summary judgment motion under Fed.R.Civ.P. 56, Oakwood is entitled to conduct discovery pursuant to Fed.R.Civ.P. 56(f).

## STATEMENT OF FACTS

**I.    OAKWOOD'S CONFIDENTIAL INFORMATION AND TRADE SECRETS.**

Oakwood is a technology-based specialty pharmaceutical company focused on hard-to-develop generic and quasi-generic, sustained-release, and small molecule injectable drugs (collectively, the "Oakwood Products").   (Doc. 1, ¶ 16). This includes the research and development of sustained release injectable drugs involving microsphere technology.  (*Id*.)  Oakwood has devoted extensive time, money, and other resources to the research, design, and development of the Oakwood Products it manufactures including, but not limited to, the design, development, and testing of various injectable drugs, the design, development, and testing of microsphere systems technologies, the design and development of various research processes, the design and development of various quality assurance and regulatory compliance processes, the design and development of various manufacturing processes, contractual arrangements with customers, the identities of contact persons with customers and suppliers, batch record formats and content, standard operating procedures, drug master files, freeze dry cycles and development, product development lists, formation development research, validation methods, validation data and reports, and new drug application filings, planned filings, and associated data.  (Doc. 1, ¶ 17).  The design, development, and testing processes, the research processes, the quality assurance and compliance

processes, and the manufacturing processes for the Oakwood Products are not generally known outside Oakwood's organization, and Oakwood takes steps reasonable under the circumstances to keep such information confidential, including, but not limited to, having its scientists sign invention and non-disclosure agreements, having potential and actual vendors, suppliers, and other business partners sign confidentiality agreements before sharing information, advising all employees through policy of the requirement that such information must be held confidential, password protecting electronically stored information, and reasonably controlling access to such information.   (Doc. 1, ¶ 18).   Such information is Oakwood's "Confidential Information and Trade Secrets."  (*Id.*)

## II.   DR. THANOO'S EMPLOYMENT AT OAKWOOD.

In November 1997, Oakwood hired Dr. Thanoo in the position of Senior Scientist.  As a condition of employment and to protect Oakwood from misuse and disclosure of its proprietary information, Oakwood required Dr. Thanoo to sign both an inventions agreement ("Inventions Agreement") and a Non-Disclosure Statement Agreement ("Non-Disclosure Agreement").  (Doc. 1, ¶ 20; Doc. 1-1; Doc. 1-2).  Pursuant to the Inventions Agreement, Dr. Thanoo agreed to disclose to Oakwood all inventions and improvements he made regarding products similar to the Oakwood Products for a period of twenty-four (24) months following the termination of his employment from Oakwood and agreed to preserve all secret and confidential information of Oakwood's.  (Doc. 1, ¶ 21; Doc 1-1, ¶ 2).

Similarly, the Non-Disclosure Agreement prohibits Dr. Thanoo from disclosing or using at any time Oakwood's Confidential Information and Trade Secrets.  (Doc. 1, ¶ 22; Doc 1-2).  In his role as Vice President of Product Development and his prior position as Senior Scientist, Dr. Thanoo designed or directly supervised the design of Oakwood's microsphere systems technology as well as other injectable drug delivery systems, and coordinated the research, development, and testing of the Oakwood Products.   Dr. Thanoo directly designed Oakwood's microsphere systems technology, including the design, research, and development of a new leuprolide injection product that relies on microsphere technology (the "Leuprolide Project") that Oakwood began developing in 2013 during his employment.  (Doc. 1, ¶ 24).

## III.   OAKWOOD DISCUSSES A BUSINESS VENTURE WITH AUROBINDO.

In October and November of 2013, Mr. Ramnan, General Manager of Sales and Marketing at Aurobindo USA, and Aurobindo Chief Executive Officer, Mr. Govindarajan, met with Mark Smith, Oakwood's Chief Executive Officer, to discuss a business venture in which Aurobindo USA would sell active pharmaceutical ingredients ("API") to Oakwood for its Leuprolide Project.  (Doc. 1, ¶¶ 26-29).   Subsequently, on November 29, 2013, Aurobindo executed a confidentiality agreement between it, AuroMedics, another U.S. subsidiary of Aurobindo based in New Jersey, and Oakwood, wherein each of the parties agreed

to not disclose or use any confidential information, including trade secrets, shared by the other parties while discussing the Leuprolide Project (the "Confidentiality Agreement").  (Doc. 1, ¶ 31; Doc. 1-3, ¶ 2).  AuroMedics subsequently executed the Confidentiality Agreement on December 2, 2013, and Oakwood on December 3, 2013.  (Doc. 1, ¶ 31; Doc. 1-3).

On December 3, 2013, Oakwood sent the fully executed Confidentiality Agreement to Aurobindo and AuroMedics, along with Oakwood's Confidential Information and Trade Secrets including a 27-page memorandum that explained the Leuprolide Project in great detail.  (Doc. 1, ¶ 32; Doc. 1-3).  Pursuant to the Confidentiality Agreement, Aurobindo and AuroMedics agreed to "use the Confidential Information of a Disclosing Party [including trade secrets] **solely for the Permitted Use** and for no other purpose.  Recipient will keep all Confidential Information of a Disclosing Party secret and confidential and will not reproduce, distribute, disclose, make available or otherwise disseminate Confidential Information …."  (Doc. 1, ¶ 33; Doc. 1-3, ¶ 3).  Ultimately, Aurobindo told Oakwood that it was not interested in pursuing the Leuprolide Project with Oakwood due to financial considerations.  (Doc. 1, ¶ 37).

## IV.    DR. THANOO LEAVES OAKWOOD FOR AUROBINDO AND MISAPPROPRIATES OAKWOOD'S TRADE SECRETS TO DEVELOP A PRODUCT SUBSTANTIALLY SIMILAR TO OAKWOOD'S LEUPROLIDE PROJECT.

Unbeknownst to Oakwood, beginning in December 2013, Aurobindo was recruiting Dr. Thanoo to leave his employment at Oakwood for a position at Aurobindo USA. (Doc. 1, ¶¶ 34-36). On April 7, 2014, Dr. Thanoo tendered his resignation from Oakwood and informed Oakwood that it was effective April 25, 2014. During a follow-up conversation, Dr. Thanoo told Mr. Smith that he was going to Aurobindo USA to develop standard generic injectable drugs and that his work would not include microsphere system technology. (Doc. 1, ¶ 39). Despite working for Aurobindo USA since April 2014, Dr. Thanoo has not notified Oakwood of any inventions or improvements which he, either solely or jointly with others, has developed that are related to or would be useful in Oakwood's research, investigations, products, machines after his resignation, as required by the Inventions Agreement. (Doc. 1, ¶ 45; Doc 1-2; ¶ 2).

In late 2016, Oakwood learned from a published transcript of an investor call with Mr. Govindarajan that Aurobindo is developing "four peptide based microsphere products which have around $3 billion top line." (Doc. 1, ¶ 41). Oakwood subsequently learned that Aurobindo has been working on microsphere system technology since at least February 2016, and that Aurobindo expected to bring the products to market in 2017. (*Id.*) Upon information and belief, Aurobindo, AuroMedics, and/or Aurobindo USA are developing or have developed a product substantially similar to Oakwood's Leuprolide Project without Oakwood's consent or knowledge. (Doc. 1, ¶ 42). Aurobindo, AuroMedics,

7

and/or Aurobindo USA could not develop this product without Dr. Thanoo's assistance and his use of Oakwood's Confidential Information and Trade Secrets, in violation of his Non-Disclosure Agreement. (*Id.*) Further, Aurobindo, AuroMedics, and/or Aurobindo USA could not develop this product without the Confidential Information and Trade Secrets that Oakwood disclosed to Aurobindo and AuroMedics as part of the discussions related to the potential business venture. (Doc. 1, ¶ 43).

On July 7, 2017, Oakwood filed its Complaint against Dr. Thanoo, AuroMedics, Aurobindo USA, and Aurobindo alleging claims for misappropriation of trade secret, breach of contract, and tortious interference with contractual relations. (*See* Doc. 1).

## **LAW AND ARGUMENT**

## I. **OAKWOOD'S COMPLAINT STATES CLAIMS UPON WHICH THIS COURT MAY GRANT RELIEF.**

When evaluating a motion to dismiss, a court must accept all facts alleged in a complaint as true, the complaint must be construed in the light most favorable to the plaintiff, and the court must determine whether, under any reasonable reading of the complaint, the plaintiff is entitled to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007); *IDT Corp. v. Unlimited Recharge, Inc.*, No. 11-4992, 2012 WL 4050298, at *11 (D.N.J. Sept. 13, 2012) (denying defendants' motion to

dismiss plaintiffs' claim for misappropriation of trade secrets while dismissing other counts).

"To survive a motion to dismiss, [the] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although a complaint must rise above a speculative level, detailed factual allegations are unnecessary. *Twombly*, 550 U.S. at 555. In determining whether a pleading states a plausible claim for relief, a court focuses on the context of the allegations and "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Oakwood's Complaint contains sufficient factual allegations which, accepted as true, state claims for relief that are facially plausible.

Oakwood's Complaint meets the pleading standards and, therefore, this Court should deny Defendants' Motion.

## II.  OAKWOOD HAS SUFFICIENTLY PLED MISAPPROPRIATION OF TRADE SECRETS.

The Complaint adequately alleges misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") and the New Jersey Trade Secret Act ("NJTSA"). The DTSA provides a civil right of action to "[a]n owner of a trade

secret that is misappropriated." 18 U.S.C. § 1836(b)(1). Misappropriation, as defined under the statute, requires "acquisition of a trade secret by another by a person who knows or has reason to know that the trade secret was acquired by improper means," or "disclosure" or "use" of a trade secret that was acquired by improper means. 18 U.S.C. § 1839(5). A claim under the NJTSA requires a similar showing.

To state a claim under the NJTSA, a plaintiff must demonstrate:

(1)    a trade secret exists;

(2)    the information comprising the trade secret was communicated in confidence by plaintiff to the employee **(Defendants do not dispute that Oakwood has adequately pleaded this element);**

(3    the secret information was disclosed by that employee and in breach of that confidence **(Defendants do not dispute that Oakwood has adequately pleaded this element)**;

(4)    the secret information was acquired by a competitor with knowledge of the employee's breach of confidence **(Defendants do not dispute that Oakwood has adequately pleaded this element)**;

(5)    the secret information was used by the competitor to the detriment of plaintiff; and

(6)    the plaintiff took precautions to maintain the secrecy of the trade secret.

*Rycoline Prod., Inc. v. Walsh*, 334 N.J. Super. 62, 71, 756 A.2d 1047 (App. Div. 2000). Here, Defendants allege that Oakwood does not adequately plead the first, fifth, and sixth element. They are wrong.

## A.    The Complaint Adequately Identifies the Existence of Trade Secrets.

Paragraphs 17, 18, and 32 of the Complaint plainly identify Oakwood's trade secrets. Rather than confront these facts as alleged in the Complaint, which

would be fatal to Defendants' Motion, Defendants make unsubstantiated conclusions, disregard the Federal Rules of Civil Procedure, and rely upon inapposite authority. Moreover, Defendants attempt to apply a heightened pleading standard is not appropriate. Indeed, courts have unequivocally rejected this approach.

Plaintiff's misappropriation of trade secrets claims is not subject to a heightened pleading standard. *IDT Corp.*, 2012 WL 4050298, at \*22 (citing *Osteotech, Inc. v. Biologic, LLC*, No. 07-1296, 2008 WL 686318, at \*5 (D.N.J. March 7, 2008) ("A misappropriation of trade secrets claim is not subject to a heightened pleading requirement")). "[A] claim of misappropriation of trade secrets does not require specific pleading of the precise information that constitutes the trade secret in order to survive a motion to dismiss." *Oswell v. Morgan Stanley Dean Witter & Co.*, No. 06cv5814, 2007 WL 1756027, at \*6 (D.N.J. June 18, 2007).

> [U]nless there are heightened pleading requirements as to a particular cause of action, the Federal Rules of Civil Procedure do not require a plaintiff to plead all relevant facts in detail, . . . and generally do not require a plaintiff to provide specific information about trade secrets at this stage of the litigation.

*Id.* (quoting *Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs.*, 2006 U.S. Dist. LEXIS 70834, at \*24-25 (D.N.J. Sept. 29, 2006) (internal citations omitted)).

In its Complaint, Oakwood identifies the following trade secrets in issue here:

- the research, design, and development of the Oakwood Products it manufactures including the design, development, and testing of various injectable drugs;
- the design, development, and testing of microsphere systems technologies;
- the design and development of various research processes;
- the design and development of various quality assurance and regulatory compliance processes;
- the design and development of various manufacturing processes, contractual arrangements with customers;
- the identities of contact persons with customers and suppliers;
- batch record formats and content;
- standard operating procedures;
- drug master files;
- freeze dry cycles and development;
- product development lists;
- formation development research;
- validation methods, validation data and reports; and
- new drug application ("NDA") filings, planned filings, and associated data.

(Doc. 1, ¶ 17).   Additionally, Oakwood identifies the confidential 27-page memorandum that it sent to Aurobindo and AuroMedics explaining the Leuprolide Project, which also contained Oakwood's trade secret information.  (Doc 1, ¶ 32).

The cases Defendants rely upon to assert a heightened pleading standard are inapposite and do not mandate, for the purposes of deciding a motion under Fed.R.Civ.P. 12(b)(6), the level of review that Defendants claim exists.  Indeed, Defendants' principle case, on which Defendants base their entire argument, was decided on motion for summary judgment, ***not a Rule 12(b)(6) motion to dismiss***. *Givaudan Fragrances Corp. v. Krivda*, No. 08-4409, 2013 WL 5781183 (D.N.J. Oct. 25, 2013) (Sheridan, J.).   Without any legal authority in support, Defendants

gloss over this fundamental chasm by surmising, "the Court's standard applies equally at the motion to dismiss stage." (Doc. 22-1, p. 11). It does not. *Givaudan* never holds that the heightened pleading standard it used to decide a motion under Fed.R.Civ.P. 56 also applies to motions under Fed.R.Civ.P. 12(b)(6).

Defendants incorrectly assert that *Givaudan* held "'[s]ufficient notice' **in a complaint** requires 'a description or identification of the allegedly misappropriated trade secrets with adequate *specificity or precision* so as to inform the defendant what the plaintiff is alleging he misappropriated.'" (Doc. 22-1, p. 11 (emphasis added) citing *Givaudan*, 2013 WL 5891193, at *6). Plainly, the *Givaudan* Court was not referring to sufficient notice in a "**complaint**," as Defendants assert. The court was deciding a summary judgment motion, not a motion to dismiss. Nor does the Court, at any point, discuss the sufficiency of the allegations in a complaint. Instead, the Court, in the context of a summary judgment motion, was discussing sufficient notice at that point in the lawsuit—five years after the Complaint had been filed filing and after extensive discovery had been conducted. *Givaudan*, 2013 WL 5891193, at *7 ("…this case is five years old and scheduled for trial, the Court finds that Givaudan has failed to provide Mane with timely and sufficient notice as to these allegedly misappropriated trade secrets"). The Court's heightened pleading standard in *Givaudan* is not the standard in a motion to dismiss.

It is also telling that the *Givaudan* Court granted defendant's motion only as it related to 582 of plaintiff's 616 formulas because plaintiff did not produce ingredient lists for those 582 formulas.  The court denied summary judgment for the other 34 formulas.   *Id.* at *5.  *Givaudan* was pending for five years and the parties conducted extensive discovery and depositions.   Here, Defendants have filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6), which solely tests the sufficiency of the Complaint, yet seek to hoist upon Oakwood a summary judgment standard.   Oakwood is entitled to seek discovery to support its allegations of misappropriation of trade secrets.  *Osteotech*, 2008 WL 686318, at *5.

Defendants' remaining cases are equally distinguishable.   In those cases, plaintiffs did not even identify a single trade secret let alone the actions defendants took to misappropriate those trade secrets.  *See Exeltis USA Dermatology, Inc. v. Accella Pharm., LLC*, No. 15-7446, 2016 WL 4265716, at *2 (D.N.J. Aug. 11, 2016) (finding that the complaint did not suggest or identify even the general nature of information and did not generically identify any category of information subject to trade secret protection);  *Diversified Indus., Inc. v. Vinyl Trends, Inc.* No. 13-6194, 2014 WL 1767471, at *8 (D.N.J. May 1, 2014) (holding defendant failed to state a claim when defendant did not identify the trade secrets and admitted in its claim that it does not know for sure what information the plaintiff obtained);  *Strikeforce Technologies, Inc. v. WhiteSky, Inc.*, No. 13-1895, 2013 WL 3508835

14

(D.N.J. July 11, 2013) (dismissing trade secrets claim because plaintiff only recited the elements of the cause of action without alleging any facts regarding actions the defendant took). Here, Oakwood has alleged not only the trade secrets that Defendants stole but also the avenues they used to steal them.

### B. Plaintiff Sufficiently Alleges That It Took Precautions To Maintain The Secrecy Of Its Trade Secrets And, Furthermore, The Trade Secrets Are Not Publicly Known.

As sufficiently alleged throughout the Complaint, Oakwood possesses trade secret information regarding the Oakwood Products, its trade secret information is valuable because it is not known, and it takes numerous precautions to maintain the secrecy of its trade secret information. (Doc. 1, ¶¶ 18, 20, 23). Defendants first attack the secrecy of Oakwood's trade secrets, claiming they are public knowledge because certain patents may include information regarding microsphere technology. While wholly improper on a motion to dismiss, Defendants argument fails because courts have long held that, even if a set of ingredients in a formula is generally known to an industry, the formula itself may still be deemed trade secrets if the combination method of those ingredients is secret. *Sun Dial Corp. v. Rideout*, 108 A.2d 442 (N.J. 1954). That is exactly the case here.

Here, Oakwood also has alleged that the design, development and testing processes, the research process, the quality assurance and compliance process, and the manufacturing process for the Oakwood Products are not known outside Oakwood. (Doc. 1, ¶ 18). Regardless of whether some techniques regarding

microsphere technology and the uses of leuprolide are public, Oakwood has sufficiently alleged that its techniques are unique to the Oakwood Products and are not generally known in the industry or elsewhere.  Based on a plain reading of the Complaint, which is all that is required to survive a motion to dismiss, this information is not public and constitutes trade secret information.  *See Reckitt Benckiser, Inc. v. Tris Pharma, Inc.*, No. 09-3125, 2011 WL 773034, at *4 (D.N.J. Feb. 28, 2011) (refusing to dismiss trade secret claim where the confidential information was identified as "the Delsym® manufacturing process, Delsym® formulations, and other private information concerning Delsym® and related research and development" although the Delsym® patent was public).

Defendants argue in the Motion that the contents of the patents and Food and Drug Administration webpages, attached to Mr. Sitzman's Declaration, are *prima facie* evidence that Oakwood does not possesses trade secrets regarding microsphere technology and leuprolides.  (*See* Doc. 22-1, p. 5) ("The '400 patent specifically discloses that '[a] variety of techniques *are known* by which active agents can be incorporated into polymeric microspheres"); Doc. 22-1, p. 8 ("leuprolide has been publicly available since 1985, and four generic manufacturers (Sandoz, Teva, Genzyme and Sun Pharma) have each introduced generic forms of a leuprolide injectable—as demonstrated by the [FDA] documents and records"); *Id.* ("the combination of leuprolide and 'microsphere technology' has also been known for decades"); Doc. 22-1, p. 15 ("Such public

16

disclosure in documents like patents … destroys any trade secret status for Oakwood's vaguely described information"). This type of extrapolation is impermissible.

Courts taking judicial notice of a public record may rely on that record "only to indicate what was in the public realm at the time, not whether the contents of those documents are true." *United States ex rel. Spay*, 913 F. Supp. 2d at 139 (*citing Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt., L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2001)); *DCIPA, LLC v. Lucile Slater Packer Children's Hosp. at Stanford*, 868 F. Supp. 2d 1042, (D. Or. 2011) ("[T]aking judicial notice of certain documents does not demonstrate the truth of everything contained in those records, and, as such, the truthfulness and proper interpretation of the document are disputable.") In *United States ex rel. Spay*, the court refused to take "judicial notice of facts gleaned from … documents" attached to a declaration filed by defendants' counsel in support of defendants' motion to dismiss. *United States ex rel. Spay*, 913 F. Supp. 2d at 140. The Court should likewise decline to take judicial notice of "facts" that Defendants cherry pick from Exhibits B-J of Mr. Sitzman's Declaration.

Further, the mere existence of patents related to microsphere technology or the use of leuprolide is irrelevant. *Reckitt*, 2011 WL 773034, at *4 ("to the extent that Defendants argue that Plaintiff had a heightened obligation to disclose the trade secret at issue since the patent for Delsym® is public, the Court does not

agree").  Defendants' improper introduction of patents and webpages, the existence of which Defendants uses as a springboard to assert baseless suppositions in their Motion, does nothing to alter the fact that Oakwood possesses trade secrets unrelated to that public information.

Finally, Defendants have executed various contracts in which they pledged to protect Oakwood's Confidential Information and Trade Secrets.  If the information was public and not a trade secret, as they allege in the Motion, then why would Defendants agree to enter into those agreements in the first place? Accordingly, Defendants argument that Oakwood's trade secrets are generally known is without basis.

### C.   Oakwood Alleges That Dr. Thanoo Used Oakwood's Confidential Information And Trade Secrets.

Oakwood alleges that Dr. Thanoo has improperly used its trade secret information while employed by Aurobindo USA on behalf of Defendants. Oakwood "need not make out specific allegations as to exactly how Defendants used or disclosed Plaintiff's trade secrets; there is no heightened standard for a misappropriation claim, and Plaintiff is entitled to seek discovery to support its allegations setting forth a *prima facie* claim."  *Osteotech,* 2008 WL 686318, at *5. Courts construing the term "use" in the context of the Uniform Trade Secrets Act, on which the NJTSA and the DTSA are significantly modeled, have held that the term is to be broadly construed.  *See JustMed, Inc. v. Byce*, 600 F.3d 1118, 1130

(9th Cir. 2010) ("there are no technical limitations on the nature of the conduct that constitutes 'use' of a trade secret . . . any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a "use". . ." (quoting Restatement (Third) of Unfair Competition § cmt. c (1995))). Thus, Oakwood has sufficiently pled facts of Dr. Thanoo's unauthorized use of its trade secrets to survive a motion to dismiss.

Beyond their previous claim that Oakwood did not adequately allege the existence of trade secrets, Defendants have not pointed to any fact in the Complaint supporting their argument that Oakwood does not allege any actual or threatened misappropriation.  Nor could they.  Oakwood specifically alleges that Aurobindo could not develop a product substantially similar to Oakwood's Leuprolide Project "without Dr. Thanoo's assistance and his use of Oakwood's Confidential Information and Trade Secrets . . ."  Doc. 1, ¶ 42).  Oakwood further alleges that "Dr. Thanoo has used and disclosed . . . and is continuing to disclose Oakwood's Confidential Information and Trade Secrets without authorization and in breach of his contractual obligations to Oakwood."  (Doc. 1, ¶¶ 52, 61).  Tellingly, Defendants' Motion completely ignores Paragraphs 42, 52, and 61 of the Complaint.  The reason is obvious.  Those paragraphs specifically allege Dr. Thanoo illegally used and disclosed Oakwood's Confidential Information and Trade Secrets in furtherance of Aurobindo's development of a product that is directly competitive to the Oakwood Products.

**D.     This Court Has Recognized And May Apply The Inevitable Disclosure Doctrine.**

The Court need not apply the inevitable disclosure doctrine because Oakwood alleges actual misappropriation of its trade secret information. *See Hatfield v. AutoNation, Inc.*, 939 So. 2d 155, 156-158 (Fla. Dist. Ct. App. 2006) (finding that "[q]uestions of inevitable disclosure need not be addressed in this case as, here, there was actual misappropriation."). Even so, Defendants' argument that "neither the DTSA nor the NJTSA recognizes the 'inevitable disclosure' doctrine as basis for finding liability of trade secret misappropriation" is misleading. (Doc. No. 119, p. 17).

While the DTSA does not recognize inevitable disclosure, courts have routinely applied the doctrine to claims under the NJTSA and have explicitly recognized that a plaintiff may withstand a 12(b)(6) motion by alleging "inevitable disclosure." *See Osteotech,* 2008 WL 686318, at *9-12 (noting that "a plaintiff may allege either actual use or 'inevitable disclosure'" to satisfy the use requirement under the NJTSA). This mirrors the doctrine's application in New Jersey state courts:

> [I]n the trade secrets context, an employer need not establish that its former employee has actually used or disclosed trade secrets. Instead, the employer may demonstrate that the ex-employee knows the trade secrets, and that under the circumstances, there is a sufficient likelihood of 'inevitable disclosure' of its trade secrets to a competitor, which will likely result in irreparable harm.

*Fluoramics, Inc. v. Trueba*, No. BER-C-408-05, 2005 WL 3455185, at *8 (N.J. Super. Ct. Ch. Div. Dec. 16, 2005). *See also*, *Graco, Inc. v. PMC Global, Inc.,* 2009 WL 904010, at *18 (D.N.J. Mar. 31, 2009) ("Under the inevitable disclosure doctrine, a former employer is entitled to enjoin even anticipated employment or other business activity that would result in inevitable disclosure in order to protect the former employer's confidential and proprietary information from disclosure.") (citing *Orthovita, Inc. v. Erbe*, No. 07-2395, 2008 WL 423446, at *10 (E.D. Pa. Feb. 14, 2008)).   Here, Oakwood alleges actual misappropriation, so the Court need not apply inevitable disclosure.    Nevertheless, Oakwood's allegations regarding Dr. Thanoo's inevitable disclosure satisfies the "use" requirement under the NJTSA.

### E.    Oakwood's Misappropriation Claims Are Not Barred By The Statute Of Limitations.

Both the NJTSA and DTSA provide for a three-year statute of limitations for misappropriation of trade secret claims.  N.J. Stat. § 56:15-8; 18 U.S.C. § 1836(d). The clock on the limitations period, however, does not start "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim."  *Lopez v. Swyer*, 62 N.J. 267, 272 (1973) (reasoning that it is "inequitable that an injured person, unaware that he has a cause of action, should be denied his day in court solely because of his ignorance, if he is otherwise blameless").

In *Talon Indus., LLC v. Rolled Metal Prods.*, an employer alleged that a defendant company, in concert with the employer's former employees, misappropriated the employer's trade secrets in violation of the NJTSA. *Talon Indus.*, 2016 U.S. Dist. LEXIS 49596, at *4 (D.N.J. April 12, 2016). The defendant company argued that the claim was time barred because the conduct occurred in 2008, but the employer waited until 2015 to file a complaint. *Id.* This Court held that the employer's factual allegation that it discovered the wrongful conduct in 2014 was sufficient to satisfy the pleading requirements. *Id.*

Here, Oakwood did not learn of Aurobindo's development of "four peptide based microsphere products" until a published transcript of an investor call was released in late 2016. (Doc. 1, ¶ 41). Based on the factual allegations in the Complaint, this was the earliest Oakwood could have discovered Defendants illegal conduct. When Dr. Thanoo resigned in April of 2014, he told Mr. Smith that he was going to Aurobindo USA ***to develop standard generic injectable drugs*** and that his work ***would not include microsphere system technology***. (Doc. 1, ¶ 39). Based on Dr. Thanoo's representations, Oakwood had no reason to suspect that Dr. Thanoo's work at Aurobindo USA would include microsphere system technology and, therefore, had no reason to suspect any of Oakwood's trade secret had or would be misappropriated. It was only after Oakwood learned of Aurobindo's development in 2016 that it began to investigate Defendant's illegal

conduct.   Accordingly, under the New Jersey discovery rule, the statute of limitations for this matter began to tick in 2016.

## III.   OAKWOOD HAS ASSERTED VALID CLAIMS FOR BREACH OF CONTRACT AND TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP.

### A.   Breach of Contract: Breach of Invention Agreement (Count III), Breach of Nondisclosure Agreement (Count IV), and Breach of Confidentiality Agreement (Count V)

In order to properly plead a cause of action for breach of contract, a plaintiff must allege the following: (1) the existence of a valid contract; (2) breach of the terms of the contract by the offending party; and (3) damages to the plaintiff resulting from the breach of contract. *Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985).   Oakwood's factual allegations regarding the Inventions Agreement, Nondisclosure Agreement, and Confidentiality Agreement and Defendant's breaches thereof, are sufficiently pleaded to state a claim for relief:

- In Count III, Oakwood alleges that Dr. Thanoo and Oakwood entered into the Inventions Agreement, a valid and enforceable contract. (Doc. 1, ¶ 68).  Dr. Thanoo then breached the Inventions Agreement by failing to notify Oakwood of all inventions and improvements which relate to the business, research, investigations, products, machines, and all lawful interest and activities of Oakwood, as required by the Inventions Agreement.  (Doc. 1, ¶¶ 69-71).  As a direct and proximate result of Dr. Thanoo's breach, Oakwood sustained damages.  (Doc. 1, ¶ 73).

- In Count IV, Oakwood alleges that Dr. Thanoo and Oakwood entered into a Non-Disclosure Agreement, that Dr. Thanoo breached the Non-Disclosure Agreement by disclosing, using, and misappropriating Oakwood's confidential and proprietary information and trade secrets,

and as a direct and proximate result of Dr. Thanoo's breaches,
Oakwood sustained damages.  (Doc. 1, ¶¶ 76-81).

- In Count V, Oakwood alleges that Aurobindo and AuroMedics
  entered into a Confidentiality Agreement with Oakwood.  (Doc. 1, ¶
  84).  Oakwood further alleges that Aurobindo, AuroMedics, and/or
  Aurobindo USA are developing a product similar to Oakwood's
  Leuprolide Project and that they are using the confidential information
  and trade secrets sent by Oakwood to Aurobindo and AuroMedics to
  develop a product competitive with the Oakwood Products in breach
  of the Confidentiality Agreement.  (Doc. 1, ¶¶ 86-87).  As a direct and
  proximate result, Oakwood sustained damages.  (Doc. 1, ¶ 89).

The well-settled standard of review on a motion to dismiss provides that

Oakwood is not required to prove each allegation in their breach of contract action.

Rather, it is entitled to every reasonable inference of fact, and an assumption that

the allegations that form the basis for its claims are true.  Oakwood meets all of the

requisite elements for a sustainable breach of contract claim in Counts III, IV, and

V.

## B.   The Complaint States A Claim For Tortious Interference With Contract.

Defendants claim, without any legal support, that Oakwood fails to state a

claim for tortious interference with contract.  Defendants are mistaken.  After

learning about the Leuprolide Project, Aurobindo and Aurobindo USA

intentionally hired away Dr. Thanoo from Oakwood and allowed him to use

Oakwood's Confidential Information and Trade Secrets in violation of his Non-

Disclosure Agreement, of which they knew.  This is a textbook case of tortious

interference with a contract.

24

To state a claim for tortious interference with contract, a party must allege "(1) actual interference with a contact; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." *214 Corp. v. Casino Reinvestment Dev. Auth.*, 280 N.J. Super. 624, 628 (Law. Div. 1994).

Oakwood alleges that it had a Non-Disclosure Agreement with Dr. Thanoo that Aurobindo USA and Aurobindo were aware of.  (Doc. 1, ¶¶ 92, 94).  Oakwood further alleges that Aurobindo USA and Aurobindo intentionally procured breaches of Dr. Thanoo's Non-Disclosure Agreement by relying on his use of Oakwood's Confidential Information and Trade Secrets to develop a product similar to Oakwood's Leuprolide Project.  (Doc. 1, ¶ 95).  Oakwood alleges that Aurobindo USA and Aurobindo's interference with Dr. Thanoo's Non-Disclosure Agreement was without justification causing Oakwood damages.  (Doc. 1, ¶¶ 96, 98).  Accordingly, Oakwood has alleged each of the required elements to state a claim for tortious interference with contract, together with sufficient facts to support such a claim and, therefore, Defendants' Motion should be denied.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss the Complaint it its entirety.

Dated:  October 23, 2017          BENESCH, FRIEDLANDER, COPLAN
                      & ARONOFF, LLP

                      */s/ Kevin M. Capuzzi*
                      By: Kevin M. Capuzzi (NJ No. 173442015)
                      Continental Plaza II
                      411 Hackensack Ave., 3rd Floor
                      Hackensack, NJ 07601-6323
                      Telephone:  (302) 442-7010
                      Facsimile:   (302) 442-7012
                      Email:        kcapuzzi@beneschlaw.com

                      Matthew D. Gurbach
                      Richard E. Hepp
                      Nora K. Cook
                      200 Public Square, Suite 2300
                      Cleveland, Ohio 44114-2378
                      Telephone:  (216) 363-4500
                      Facsimile:   (216) 363-4588
                      Email:        mgurbach@beneschlaw.com
                                    rhepp@beneschlaw.com
                                    ncook@beneschlaw.com

                      *Attorneys for Plaintiff Oakwood*
                      *Laboratories, L.L.C.*

## <u>CERTIFICATE OF SERVICE</u>

I, Kevin M. Capuzzi, hereby certify that on October 23, 2017, I caused a true and correct copy of *Plaintiff's Brief in Opposition To Defendants' Memorandum Of Law In Support Of Motion To Dismiss Under Federal Rule Of Civil Procedure 12(B)(6)* to be served upon the parties of record via the Court's electronic filing system:

*/s/ Kevin M. Capuzzi*
Kevin M. Capuzzi (NJ No. 173442015)