# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| OAKWOOD LABORATORIES, LLC., | Civil Action No.: 17-cv-05090(PGS) |
| *Plaintiff*, | MEMORANDUM AND ORDER |
| v. | |
| DR. BAGAVATHIKANUN THANOO, et al, | |
| *Defendants.* | |

SHERIDAN, U.S.D.J.

This matter comes before this Court on Defendant's motion to Dismiss Plaintiff's Complaint. [ECF No. 22].

## **FACTS AND PROCEDURAL HISTORY**

Defendants, Auribindo Pharma U.S.A., Inc. ("Aurobindo USA"), Aurobindo Pharma Ltd. ("Aurobindo Pharma"), and Auromedics Pharma LLC ("Auromedics") are generic drug manufacturers that make generic drugs and drugs products, or copies of what are typically brand-name drugs. (Compl. ECF No.1 ¶¶39-40).

Plaintiff, Oakwood Laboratories LLC ("Oakwood") also makes generic drugs and drug products. (*Id.* at 16). Defendant, Bagavathikanun Thanoo ("Thanoo") formerly worked as a Vice President of Product Development at Oakwood. (*Id.* at ¶24). He was first hired by Oakwood in 1997 as a Senior Scientist. As a condition of his employment, Oakwood required Thanoo to sign both an Invention Agreement ("Invention Agreement") and a Non-Disclosure Statement

1

Agreement ("Non-Disclosure agreement"). (Compl. 20; ECF No.1-1 and 1-2). As part of the agreement, Thanoo consented to

> promptly disclose to Oakwood Laboratories, L.L.C., through its President or other duly authorized designee, all invention and improvements, whether then believed or later found to be patentable or not, made or conceived solely by [Thanoo], or jointly with another or other within the whole term of his employment by Oakwood Laboratories, L.L.C., and for twenty-four months (24) after the termination of such employment, which relates to or are useful in the business, research, investigations, products, machines, and all lawful interests and activities of Oakwood Laboratories, L. L.C.
>
> [ECF No.1.1 pg. 1, ¶2].

Also pursuant to the agreement, Thanoo agreed to preserve all of Oakwood's secret and confidential information. (Compl. ¶21; *Id*.). Similarly, Thanoo also signed a Non-Disclosure Agreement prohibiting him from disclosing or using at any time Oakwood's confidential information and proprietary information (*Id*. ¶22; ECF No. 1-2). In his role as Vice President of Product Development and his prior position as Senior Scientist, Plaintiff supports that Thanoo designed or directly supervised the design of the Oakwood products. Thanoo also directly designed Oakwood's microsphere systems technology, including the design, research, and development of a new leuprolide injection product that relies on microsphere technology ("Leuprolide Project") that Oakwood began developing in 2013, during Thanoo's employment. (Compl. ¶24).

In October and November 2013, Mr. Ramnan, General Manager of Sales and Marketing at Aurobindo USA and Aurobindo Chief Executive Officer, Mr. Govindarajan, met with Mark Smith, Oakwood's Chief Executive Officer, to discuss a business venture in which Aurobindo USA would sell active pharmaceutical ingredients ("API") to Oakwood for its Leuprolide Project. (Compl. ¶¶26-29). On November 29, 2013, Aurobindo executed a Confidentiality Agreement between it, Auromedics, another U.S. subsidiary of Aurobindo based in New Jersey, and Oakwood. Pursuant

to the agreement the parties allegedly decided not to disclose or use any confidential information, including trade secrets, shared by the parties while discussing the Leuprolide Project (Compl. ¶31; ECF No. 1-3, 2).

On December 3, 2013, Oakwood sent the fully executed Confidentiality Agreement to Aurobindo and Auromedics, along with Oakwood's confidential information and trade secrets. (Compl. ¶32). Ultimately, Aurobindo told Oakwood that it was not interested in pursuing the Leuprolide Project with Oakwood due to financial considerations. (Compl. ¶37).

In April 2014, Thanoo resigned from Oakwood and was hired as Vice President of R&D Injectable with Aurobindo USA. (Compl. ¶34-36). Upon resigning, Thanoo informally told another Oakwood employee that he would be working for Aurobindo. However, aside from that conversation, he has not notified Oakwood of any inventions or improvements which he, solely, or jointly with others, has developed that are related to or useful to Oakwood's research, investigations, products, machines after his resignation, as required by the Inventions Agreement he executed when his employment at Oakwood began. (*Id.* at ¶45).

On July 12, 2017, Oakwood filed a Complaint against Dr. Thanoo for misappropriation of Oakwood's trade secrets and confidential information in violation of the Defend Trade Secrets Act (DTSA) and the New Jersey Trade Secrets Act (NJTSA). (*Id*. at ¶¶39-66).

In the Complaint, Plaintiff alleges that in late 2016, Oakwood learned -- from a published transcript of an investor call with Mr. Govindarajan -- that Aurobindo had been developing "four peptide based microsphere products which have around $3 billion top line." (*Id.* at ¶41). Oakwood subsequently learned that Aurobindo has been working on the microsphere system technology since at least February 2016, and that Aurobindo expected to bring the product to the market in 2017. (*Id*.). Plaintiff alleges that Defendants are developing or have developed a product

3

substantially similar to Oakwood's Leuprolide Project without Oakwood's consent and knowledge. (*Id*. at ¶42). Plaintiff further contends that Defendants could not have developed this product without Thanoo's assistance and his use of Oakwood's confidential information and trade secrets in violation of his non-disclosure agreement. (*Id*.) Additionally, Defendants could not develop this product without the confidential information and trade secrets that Oakwood disclosed to them as part of the discussions related to their potential business venture. (*Id*. at ¶43).

Plaintiff explains in the Complaint,

> Oakwood has devoted extensive time, money, and other resources to the research design, and development of the Oakwood Products it manufactures, including the design, development, and testing of various injectable drugs, the design, development, and testing of microsphere systems technologies, the design and development of various research processes, the design and development of various manufacturing processes, contractual arrangements with customers, the identities of contact persons with customers and suppliers, batch record formats and content, standard operating procedures, drug master files, freeze dry cycles and development, product development lists, formation development research, validation methods, validation data and reports, and new drug application ("NDA") filings, planned filings, and associated data.

(Compl. ¶17). The Complaint further asserts in paragraph 18 that "[t]he design, development, and testing processes, the research processes, the quality assurance and compliance processes, and the manufacturing processes for the Oakwood Products . . . constitute[] trade secret."

*Allegations in the Complaint*

Plaintiff's Complaint alleges the following Counts:

**COUNT I** Misappropriation of Trade Secrets – Defend Trade Secrets Act of 2016 – 18 U.S.C. §1832 (Defendant Thanoo)

**COUNT II** Misappropriation of Trade Secrets- New Jersey Secrets Act- N.J. Rev. Stat. § 56:15-1 et seq. (Defendant Tahnoo)

**COUNT III** Breach of Contract – Inventions Agreement (Defendant Tahnoo)

**COUNT IV** Breach of Contract – Non-Disclosure Agreement (Defendant Tahnoo)

4

>    **COUNT V** Breach of Contract - Confidentiality Agreement (Defendants Aurobindo and AuroMedics)
>
>    **COUNT VI** Tortious Interference with Contractual Relationship (Defendants Aurobindo and Aurobindo USA)

Defendants now bring a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Defendant supported its motion with a Certification filed by Counsel Michael Sitzman. Upon motion by Plaintiff, this Court decided to strike the certification and attached exhibits and disregard it in deciding this motion. [ECF No. 32].

## **LEGAL STANDARD**

Defendants argue that Plaintiff's Complaint should be dismissed for failure to state a claim because Plaintiff has failed to identify with sufficient specificity the trade secret that Defendants allegedly misappropriated. On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can

prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir.), *cert. denied, Forbes v. Semerenko*, 531 U.S. 1149, 121 S. Ct. 1091 (2001). The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . ." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal citations and quotations omitted).

This Court reviews Plaintiff's Complaint pursuant to this standard.

## ANALYSIS

*COUNT I-II    (Misappropriation of Trade Secrets)*

First, with regard to Counts I and II, Defendants argues that Plaintiff's description of the alleged trade secrets (*See* Compl. ¶¶17-18) is inadequate because Plaintiff never identifies the misappropriated trade secrets but simply lists general categories of tasks that are routinely undertaken by every generic drug manufacturer. (Def. Br. pg. 4). Given the general character of the allegations, Defendants requested by way of correspondence, that Plaintiff provide a "description of [Oakwood's] alleged trade secrets with specificity and precision," citing to standard set forth in *Givaudan Fragrances Corp. v. Krivda*, No. 08-4409, 2013 WL 5781183, at

*4 (D.N.J. Oct. 25, 2013) (stating that "a plaintiff in a misappropriation of trade secrets case must identify" its alleged trade secrets with "adequate specificity or precision" to provide "[s]ufficient notice" of "what the plaintiff is alleging [the defendant] misappropriated")(emphasis added.) Oakwood rejected the request supporting that their burden had been met. (*Id.* Exhibit A).

Defendants contend that Plaintiff's sole theory of liability is not actual or threatened misappropriation but "inevitable disclosure." Defendants support that Plaintiff never alleges where, when, why, or how Thanoo misappropriated Plaintiff's trade secrets but bases the entirety of the accusations on the belief that disclosure and use of its trade secret are likely inevitable because Thanoo had access to the trade secrets. (*Id.* at pg. 6).

In addition, Plaintiff alleges misappropriation of trade secrets under the DTSA and NJTSA.

DTSA provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The statute defines misappropriation as requiring the "acquisition of a trade secret by another by a person who knows or has reason to know that the trade secret was acquired by improper means," or "disclosure" or "use" of a trade secret that was acquired by improper means. 18 U.S.C. §1839(5).

To prevail on a claim for misappropriation of trade secrets under New Jersey law (NJTSA), a party must establish: "(1) the existence of a trade secret; (2) communicated in confidence by the plaintiff to the employee; (3) disclosed by the employee in breach of that confidence; (4) acquired by the competitor with knowledge of the breach of confidence, and (5) used by the competitor to the detriment of the plaintiff." *Merckle GmbH v. Johnson & Johnson*, 961 F.Supp. 721, 730 (D.N.J. 1997); *Rycoline Prods., Inc. v. Walsh*, 756 A.2d 1047, 1052 (N.J. Super. Ct. App. Div. 2000). The party who asserts the trade secret bears the burden of proving that the information is a secret and

not a matter of general knowledge in the industry. *Rohm & Haas Co. v. Adco Chem. Co*., 689 F.2d 424, 431 (3d Cir. 1982).

While at this stage of litigation Plaintiff is not required to set forth a claim in heightened specificity, it must still provide sufficient information to put Defendants on notice of the nature of the claim and to support the claim itself. After reviewing the Complaint, this Court finds the list of actions allegedly constituting trade secret was not sufficiently specific. (*See* Compl. ¶¶17; 18). Plaintiff never identifies or points to a specific action, process, or formula that is the subject of this action. In failing to do so, Plaintiff fails to meet the elements to bring a claim for misappropriation.

*COUNT III-V (Breach of Contract)*

In Count III, Plaintiff alleges a breach of the Invention Agreement by Thanoo's failure to notify Plaintiff of inventions or improvements in accordance with the twenty-four months requirement of the agreement. As a consequence of these actions, Plaintiff alleges, they sustained damages. (Compl. ¶¶69-74).

In Count IV, Plaintiff alleges a breach of the Non-Disclosure agreement due to Thanoo's alleged disclosure of confidential information. Plaintiff alleges damages as a direct result of said actions. (Compl. ¶¶77-82).

Lastly in Count V, Plaintiff alleges a breach of contract by Defendants who had entered into the Confidentiality Agreement. (Compl. ¶¶83-90).

Under New Jersey law, the elements of a breach of contract are that: (1) The parties entered into a valid contract; (2) the defendant failed to perform its contractual obligation; and as a result (3) the plaintiff sustained damages*. See Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc*., 737 F.3d 879, 900 (3d Cir. 2013); *Peck v. Donovan*, 565 F. App'x 66, 69-70 (3d Cir. 2012).

Plaintiff argues breach of contract by raising violations of the Inventions Agreements, the Disclosure Agreement and the Confidentiality Agreement. Given this Court's inability to discern what the trade secrets that were allegedly misappropriated are, it would difficult, if not impossible, to find whether the Defendants violated or failed to perform any of their contractual obligations.

*COUNT VI (Tortious Interference)*

Regarding Plaintiff's tortious interference claim, Defendants argue that the claim should be dismissed because they rely on conclusory, unsupported statements.

To establish this tort under New Jersey law, a plaintiff must prove: (1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference. *Printing Mart-Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 37-38 (N.J. Supr. 1989). *See Digiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 558, (D.N.J. 2002).

Since Plaintiff has not alleged which, if any, trade secrets were misappropriated, any claim of tortious interference would be based on conclusory unsupported statements.

## CONCLUSION

The Complaint, as filed, fails to provide a proper description of the trade secrets that Defendants allegedly misappropriated, leaving Defendants without sufficient notice to defend the action. The lack of details in the subject matter of the claim makes it impossible for the Complaint to survive the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## ORDER

This matter, having been brought before the Court on Defendants' motion to dismiss [ECF No. 22], and the Court having considered the briefs and submissions of the parties, and having heard oral argument;

IT IS on this 28th day of November, 2017;

**ORDERED** that Defendant's motion to dismiss (ECF No. 22) is GRANTED; and it is further

**ORDERED** that this matter is dismissed without prejudice; and it is further

**ORDERED** that Plaintiff may file an amended complaint within 30 days.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.