UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| OAKWOOD LABORATORIES, LLC., *Plaintiff*, v. DR. BAGAVATHIKANUN THANOO, et al, *Defendants*. | Civil Action No.: 17-cv-05090(PGS) MEMORANDUM AND ORDER |

SHERIDAN, U.S.D.J.

This matter comes before this Court on Defendant's motion to Dismiss Plaintiff's Amended Complaint. [ECF No. 37] and Plaintiff's Notice to strike the Declaration of Michael A. Sitzman [ECF No. 41].[1] As a preliminary matter, the Court will not consider the declaration and attachments submitted by Mr. Sitzman in deciding this motion to dismiss. When deciding a motion to dismiss a court may, but it is not bound to, take judicial notice of appropriate facts without converting the motion into one for summary judgment. *Clements v. Sanofi-Aventis*, U.S., Inc., 111 F. Supp. 3d 586, 596, (D.N.J. 2015). Here, the Court finds taking judicial notice of the proposed documents, for the reasons sought by Defendants, to be inappropriate. Accordingly, Plaintiff's motion to strike Michael A. Sitzman's declaration (ECF No. 41) is granted.

I.

On July 12, 2017, Plaintiff filed a complaint against Defendant for misappropriation of trade secrets and confidential information in violation of the Defend Trade Secret Act (DTSA) and

---

[1] The notice to strike is being considered as a motion.

1

the New Jersey Trade Secrets Act (NJTSA). Upon Defendant's unilateral motion to dismiss, on November 28, 2017, the complaint was dismissed pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim, specifically for Plaintiff's failure to allege with sufficient specificity that there was misappropriation of trade secrets by Defendant. [ECF No. 34]. The Court also granted Plaintiff's motion to strike Sitzman's declaration [ECF No. 32]. On December 28, 2017, Plaintiff filed the First Amended Complaint where Plaintiff sets forth facts as explained below. [ECF No. 35].

Defendants, Aurobindo Pharma U.S.A., Inc. ("Aurobindo USA"), Aurobindo Pharma Ltd. ("Aurobindo Pharma"), and Auromedics Pharma LLC ("Auromedics") are generic drug manufacturers that make generic drugs and drugs products, or copies of what are typically brand name drugs. (First Amended Complaint, "FAC" ECF No. 35, ¶35).[2]

Plaintiff, Oakwood Laboratories LLC ("Oakwood") also makes generic drugs and drug products. (*Id.* at ¶16). Defendant, Bagavathikanun Thanoo ("Thanoo") formerly worked as a Vice President of Product Development at Oakwood and is now employed with Aurobindo USA. (*Id.* at ¶17, ¶23). He was first hired by Oakwood on November 24, 1997 as a Senior Scientist. As a condition of his employment, Oakwood required Thanoo to sign both an Invention Agreement and a Non-Disclosure Statement. (Id. ¶23). As part of the Invention Agreement, Thanoo consented to

> promptly disclose to Oakwood Laboratories, L.L.C., through its President or other duly authorized designee, all invention and improvements, whether then believed or later found to be patentable or not, made or conceived solely by [Thanoo], or jointly with another or other within the whole term of his employment by Oakwood Laboratories, L.L.C., and for twenty-four months (24) after the termination of such employment, which relates to or are useful in the business, research, investigations, products, machines, and all lawful interests and activities of Oakwood Laboratories, L. L.C.

---

[2] In the Amended Complaint, Plaintiff lists parties that are not defendants in the action: Sauganash Foundation, Rockside Foundation, Fairmount Investors LLP and Eastern Shore-Mentor Limited partnership. (FAC ¶2-5).

[ECF No. 35, ¶24]. Also pursuant to the agreement, Thanoo agreed to preserve all of Oakwood's secret and confidential information. (Id.). Similarly, Thanoo also signed a Non-Disclosure Agreement prohibiting him from disclosing or using at any time Oakwood's confidential information and proprietary information (Id. ¶25). Specifically, the Non-Disclosure Agreement stated in part,

> I understand and acknowledge my obligation to refrain from disclosing Oakwood Laboratories' confidential and proprietary information and to refrain from using it for the benefits of any other person or entity without the permission of Oakwood Laboratories. I understand that my obligation results from the nature of my employment and the circumstances of disclosure, and will remain even after termination of my employment relationship.

[Id. 25]. The non-disclosure agreement does not restrict Thanoo from working for a competitor of Oakwood, but rather it only seeks to prevent Thanoo from disclosing or using Oakwood's confidential and proprietary information. (Id. ¶26). Plaintiff avers that the trade secrets Thanoo acquired during his employment with Oakwood include Oakwood's product formulations, product designs and ingredients, manufacturing process, testing procedures and protocols, quality control procedures, and process design controls. (Id. ¶28). Plaintiff asserts that, in his role as Vice President and Senior Scientist, Thanoo was principally responsible for the development of the Oakwood Products, including designing or directly supervising the design of Oakwood's microsphere systems technology as well as other injectable drug delivery system, and coordinating the research, development and testing of such Oakwood Products. Thanoo also designed Oakwood's microsphere system technology, including the design, research and development of leuprolide and octreotide sustained released products that rely on microsphere technology. ("Microsphere Project")[3] (Id. ¶28).

---

[3] As stated in the FAC, Leuprolide is a member of the group of drugs known as gonadotropin-releasing hormone analogs (GnRH analogs), also known as luteinizing hormone releasing hormone agonists (LHRH analogs.

Plaintiff alleges that Thanoo directed the Microsphere Project which required Oakwood to design numerous formulations based on a number of variables that were determined after extensive trial and error testing. (Id. ¶29). Among these, the testing included: (1) the type of polymer selected, including ratio of lactide to glycolide, and type of end group used; (2) molecular weight and inherent viscosity of the polymer; (3) ration of drug to polymer, both targeted and achieved; (4) type of process used to form microspheres; (5) mixing speeds used in the process; (6) types and quantities of solvents used in the process; (7) flow rates used in the process; and (8) processing times and holding times for various solutions and suspensions of microspheres. Oakwood asserts that such information is not generally known to public and were useful in the development of microsphere technology. (Id. ¶29).

Plaintiff avers that Thanoo knew, possessed, or had access to all of this information and data when he joined Aurobindo. (Id. ¶30). Oakwood employed reasonable efforts to maintain the secrecy of its confidential research and development, manufacturing, business and financial information.

By way of background, in October and November 2013, Mr. Ramnan, General Manager of Sales and Marketing at Aurobindo USA, and Aurobindo Chief Executive Officer, Mr. Govindarajan, met with Mark Smith, Oakwood's Chief Executive Officer, to discuss a business venture in which Aurobindo USA would sell active pharmaceutical ingredients ("API") to Oakwood for its Leuprolide Project. (Compl. ¶¶36). Specifically, on November 18, 2013, Mr. Govindarajan visited Oakwood's headquarters where he met with Smith, to discuss Aurobindo's

---

Leuprolide is a synthetic peptide drug modeled after the human hypothalamic gonadotropin releasing hormone (GnRH). A GnRH analogue is designed to interact with GnRH receptor and modify the release of pituitary gonadotropins FSH and LH for therapeutic purposes, stopping the release of testosterone from the testicles in men and the release of estrogen from the ovaries in women. This reduction of hormone levels slows or stops the growth of cancer cells that depend on those hormones.

and Aurobindo USA's capabilities. Govindarajan also spoke with Thanoo on this visit. (Id. ¶39) During this visit, Aurobindo informed Oakwood that it had no prior experience with peptide based microsphere products. (Id. ¶40). On November 20, 2013, Govindarajan connected via email with Thanoo and J.V.N. Reddy, vice-president of Aurobindo. (Id. ¶41). On November 29, 2013, Aurobindo executed a Confidentiality Agreement between it, Auromedics, another U.S. subsidiary of Aurobindo based in New Jersey[4], and Oakwood. Pursuant to the agreement the parties allegedly decided not to disclose or use any confidential information, including trade secrets, shared by the parties while discussing the Leuprolide Project (Id. ¶42).

On December 3, 2013, Oakwood and Aurobindo entered into the Confidentiality Agreement; and Oakwood sent the Confidentiality Agreement to Aurobindo and Auromedics, along with Oakwood's confidential information and trade secrets. This includes a 27-page memorandum explaining the leuprolide products (the "Leuprolide Memo") (Compl. ¶¶43-44). On December 16, 2013, representatives from Oakwood, including Thanoo, Aurobindo and AuroMedics engaged in a conference call to discuss the Leuprolide Products. (Id. ¶46). On December 17, 2013, Ramnan sent an email to Thanoo noting that he tried to call Thanoo and wanted to know when he might be available to talk.

On January 9, 2014, Reddy sent his username for Skype to Thanoo so that they may speak later in the day. (Id. ¶48). Ultimately, Aurobindo told Oakwood that it was not interested in pursuing the Leuprolide Project with Oakwood due to financial considerations. (Id. ¶49). Plaintiff alleges that the financial reasons were bogus and instead Aurobindo recruited Thanoo because it knew Thanoo possessed knowledge of the Oakwood's proprietary and trade secret information related to the Microsphere Project. (Id. ¶50).

---

[4] Hereinafter collectively referred to as "Aurobindo."

Oakwood subsequently engaged a different company to provide API for the Leuprolide Products, which it continues to develop for the market. (Id. ¶51).

On April 7, 2014, Thanoo tendered his resignation from Oakwood and informed Oakwood that it was effective April 25, 2014. During a follow up conversation, Thanoo told Smith that he was hired by Aurobindo to develop standard generic injectable drugs and that his work at Aurobindo would not include microsphere system technology (Id. ¶52). Plaintiff avers that instead Thanoo routinely worked on products involving microsphere system technology while employed by Aurobindo (Id.). Plaintiff has not provided any facts in support of this conclusory statement.

Plaintiff alleges that in 2013, Thanoo instructed subordinates to send to his personal email address all trade secret information regarding the Oakwood Products, including trade secret information related to the testing and processing of Oakwood's microsphere system. (Id. ¶53). The Complaint does not allege the specific information that was provided.

In April 2014, Aurobindo hired Thanoo in the position of Vice President of R & D Injectable, with a focus on development of "complex generic injectable drugs." Plaintiff argues that Thanoo is engaging in work that includes microsphere system technology and products that are comparative with Leuprolide Product. (Id. ¶54).

In late 2016, Oakwood learned from a published transcript of an investor call with Dr. Govindarajan that Aurobindo was developing "four peptide based microsphere products which have around $3 billion top line." (Id. ¶55). Plaintiff subsequently learned that Aurobindo has been working on the microsphere system technology since at least February 2016, but Plaintiff avers that Aurobindo has been engaged in development of these microsphere products much earlier than that date. (Id.).

Overall, Plaintiff suggests that Defendants are developing or have developed a product substantially similar to and competitive with Oakwood's microsphere project using Oakwood's trade secret information, including trade secret information related to the Leuprolide products, which Aurobindo and Thanoo misappropriated from Plaintiff. (Id. ¶56). This allegation is based on the belief that Defendants could not have developed their product within a two-year time frame without Thanoo's assistance and his use of Plaintiff's confidential information and trade secrets, in violation of his Non-Disclosure Agreement. (Id. ¶57). Additionally, Plaintiff argues that Defendants could not develop the product without utilizing Oakwood's trade secret information contained in the Leuprolide Memo that Oakwood sent to Aurobindo as part of the discussions related to the potential business venture. As such, the unpermitted use of the information constituted a breach of the Agreements. (Id. ¶58).

Plaintiff alleges that since the beginning of Thanoo's employment at Aurobindo in April 2014, he "has never notified Oakwood of any inventions or improvements which he, either solely or jointly with others, has developed that are related to or would be useful in Oakwood's research, investigations, products, machines after his resignation, as required by the Inventions Agreement." (Id. ¶60). Ultimately Plaintiff is concerned that unless Defendants are enjoined from disclosing and using Oakwood's confidential information and trade secrets and from otherwise violating their agreements with Oakwood, Defendants will continue to cause Oakwood great and irreparable competitive harm. (Id. ¶61).

In the Amended Complaint, as in the previous Complaint, Plaintiff raises the following causes of action:

**COUNT I** Misappropriation of Trade Secrets – Defend Trade Secrets Act of 2016 – 18 U.S.C. §1832 (Defendant Thanoo)

**COUNT II** Misappropriation of Trade Secrets- New Jersey Secrets Act- N.J. Rev.

7

Stat. § 56:15-1 et seq. (Defendant Tahnoo)

**COUNT III** Breach of Contract – Inventions Agreement (Defendant Thanoo)

**COUNT IV** Breach of Contract – Non-Disclosure Agreement (Defendant Thanoo)

**COUNT V** Breach of Contract - Confidentiality Agreement (Defendants Aurobindo and AuroMedics)

**COUNT VI** Tortious Interference with Contractual Relationship (Defendants Aurobindo and Aurobindo USA).

II.

Once again, Defendants argue that Plaintiff's Complaint should be dismissed for failure to state a claim because Plaintiff has failed to identify with sufficient specificity the trade secret that Defendants allegedly misappropriated. On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will

entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir.), cert. denied, *Forbes v. Semerenko*, 531 U.S. 1149, 121 S. Ct. 1091 (2001). The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . ." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal citations and quotations omitted).

III.

Upon review of Plaintiff's Amended Complaint, Plaintiff, again, fails to provide sufficient support to the claims set forth.

Specifically, with regards to Counts I and II, Plaintiff again fails to properly identify the misappropriated trade secrets. In paragraph 27 of the Complaint, Plaintiff states,

> The trade secrets of Oakwood which Dr. Thanoo acquired during his employment with Oakwood include, but are not limited to, Oakwood's product formulations, product designs and ingredients, manufacturing process, testing procedures and protocols, quality control procedures, and process design controls.

This paragraph is insufficient because, (1) it does not specifically identify and enumerate the secrets acquired and used by Thanoo during his employment at Aurobindo; and (2) it does not set forth facts about how the specific secrets were utilized by Thanoo at Aurobindo. Plaintiff focused on paragraph 29 for details on the misappropriated secret. There, Plaintiff reviews the

9

long period of the testing and the elimination of some substances that repetitive trial and error led Oakwood to develop their product. For example, in sub-paragraph (a) Plaintiff mentions that Oakwood internally tested numerous types of polymers to select the specific ones that resulted in time release duration of both one and three months. Nevertheless, Plaintiff does not mention the type of polymer Oakwood used, nor does Plaintiff provide a comparison to any polymer allegedly used by Defendant. In sub-paragraph (b) Oakwood discusses the testing of molecular weight and inherent viscosity of the polymer. However, Plaintiff does not include specifics as to its findings, a comparison to what Defendants utilized in their product or any evidence of misappropriation of that data. The same lack of comparison and details is evident in sub-paragraphs (c) through (h), where Plaintiff discusses, without any details, testing of the ratio of drug to polymer, mixing speeds used in the process, types and quantities of solvents used in the process, flow rates used in the process, processing time and holding times for various solutions and suspensions of microspheres. (FAC ¶29). Again, Plaintiff's testing and achievement of the data does not show misappropriation by Defendants, nor does it narrow down the specific allegations of what was misappropriated.

As it is, Plaintiff sets forth conclusory allegations supported by the reasoning that, Defendants could not have developed their product without the information known by Thanoo and/or the information set forth in the confidential memo that was provided to Aurobindo in the midst of their tentative business transaction. The broad statements of Plaintiff are insufficient to support a claim for misappropriation and does not give sufficient notice to Defendants to prepare a proper defense.

In Count III and VI, Plaintiff alleges claims of breach of contract and tortious interference with contractual relationship. In the breach of contract claims, Plaintiff alleges that by misappropriating the trade secrets, Defendants breached: (1) Tahnoo breached his Non-Disclosure

10

Statement as well as an Invention Agreement; (2) Aurobindo Pharma and Auromedics breached a Confidentiality Agreement; and (3) Aurobindo Pharma and Aurobindo USA engaged in tortious interference with the nondisclosure Statement allegedly executed between Thanoo and Plaintiff. Nevertheless, as Defendant points out, each allegation lacks necessary factual details to support a plausible cause of action.

Under New Jersey law, the elements of a breach of contract are that: (1) the parties entered into a valid contract; (2) the defendant failed to perform its contractual obligation; and as a result (3) the plaintiff sustained damages. *See Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013); *Peck v. Donovan*, 565 F. App'x 66, 69-70 (3d Cir. 2012). Without identifying what the misappropriations were, it would be difficult to determine whether a contract was breached. At this juncture, the Court is unable to discern breach of any contract and cannot infer a breach of contract solely from conclusory statements.

Plaintiff's tortious interference claim also appears to be conclusory for similar reasons. To establish this tort under New Jersey law, a plaintiff must prove: (1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference. *Printing Mart-Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 37-38 (N.J. Supr. 1989). *See Digiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 558, (D.N.J. 2002).

Under this claim, Plaintiff alleges a valid non-disclosure agreement exists with Thanoo (FAC ¶109). Pursuant to the terms of the agreement, Thanoo had an "obligation to refrain from disclosing Oakwood Laboratories' confidential and proprietary information and to refrain from using for the benefits of any other person or entity without the permission of [Plaintiff]." (Id. ¶110). Plaintiff alleges, that Aurobindo, who was likely aware of the non-disclosure agreement,

11

intentionally procured Thanoo's breach of it. (Id ¶112). Plaintiff alleges that "upon information and belief [Defendant] is developing a product substantially similar to and competitive with [Plaintiff]." (Id.) Paragraph 112 of the Amended Complaint seeks to emphasize how interrelated Plaintiff's claims are. As mentioned above, it is unclear exactly what Plaintiff is alleging was misappropriated. Consequently, it is unclear whether a contract was breached or interfered with. Thus, Claim III also appears to lack sufficient support to survive this motion.

The Court notes that Plaintiff made one substantial allegation that in late 2013 Thanoo instructed subordinates to send to his personal email address certain trade secret information regarding the Oakwood Products, including trade secret information related to the testing and processing of Oakwood's microsphere system. (Id. ¶53). However, as it stands, the Complaint does not provide factual details to determine if such information was used by Aurobindo.

At oral argument Plaintiff's counsel mentioned that he could have included more factual details, yet he believed the allegations in the Complaints to be sufficient to meet the *Iqbal-Twombly* standard, the Court disagrees. As it stands, Defendants' counsel's theory rings true. That is, Plaintiff filed this Complaint seeking broad discovery about the products being developed for competition purposes. Nevertheless, the Court will allow Plaintiff to amend the Complaint once again within 30 days from the date of this Order.

ORDER

This matter, having been brought before the Court on Defendants' motion to dismiss [ECF No. 37], and the Court having considered the briefs and submissions of the parties, and having heard oral argument;

IT IS on this 12th day of June, 2018;

**ORDERED** that Defendant's motion to dismiss (ECF No. 37) is GRANTED; and it is further

**ORDERED** that Plaintiff's motion to strike Michael Sitzman's declaration (ECF No. 41) is GRANTED; and it is further,

**ORDERED** that Plaintiff may file an amended complaint within 30 days.

*/s/ Peter M. Sheridan*
PETER G. SHERIDAN, U.S.D.J.